UNITED STATES COURT OF INTERNATIONAL TRADE

---------------------------------------------------------------X
:
**KING MAKER MARKETING, INC.,** :
:
      **Plaintiff,** :
:
      v. : **Court No. 24-134**
:
**UNITED STATES,** :
:
      **Defendant.** :
---------------------------------------------------------------X

## COMPLAINT

Plaintiff KING MAKER MARKETING, INC. by undersigned counsel, for its Complaint does hereby state and allege as follows:

## CAUSE OF ACTION

1. Plaintiff brings this action to contest the deemed denial of its protest challenging United States Customs and Border Protection's decisions to deny various claims for substitution unused merchandise drawback submitted pursuant to 19 C.F.R. §1313(j)(2).

## JURISDICTION

2. This Court has exclusive subject matter jurisdiction over this protest denial action pursuant to 28 U.S.C. §1581(a).

3. All liquidated duties, taxes and fees were paid prior to the commencement of this action.

# PARTIES

4. Plaintiff King Maker Marketing Inc., of Raleigh, North Carolina, a unit of U.S. Tobacco Cooperative Inc., is a distributor of domestic and imported value cigarettes, and was the exporter of the cigarettes which are the subject of the drawback claims at issue in this action. It is the real party in interest in this action.

5. The United States is the Federal Defendant. It acted in this case through its agency, United States Customs and Border Protection (CBP), a unit of the Department of Homeland Security.

# STATEMENT OF FACTS

6. On various dates as shown in the table below, King Maker Marketing imported into the United States certain paper-wrapped cigarettes, on which it paid Federal Excise Taxes and Merchandise Processing Fees:

| Drawback Entry | Date Filed | Claimant | Drawback Amt. | MPF $ | FET $ | Total $ Claimed | Dates goods entered for consumption. | Dates goods admitted into FTZ |
|---|---|---|---|---|---|---|---|---|
| H52-0004901-4 | 05/05/2018 | KMM | $ 1,366.04 | $ - | $ 50,225.31 | $ 51,591.35 | 5/6/2013 | 2/23/13 - 4/20/13 |
| H52-0004902-2 | 05/10/2018 | KMM | $ 17,282.29 | $ 476.50 | $ 627,816.42 | $ 645,575.21 | 5/13/13 - 5/28/13 | 11/3/12 - 11/17/12 |
| H52-0004903-0 | 05/10/2018 | KMM | $ 17,259.23 | $ 478.23 | $ 627,816.16 | $ 645,553.62 | 5/28/13 - 6/17/13 | 10/12/12 - 4/20/13 |
| H52-0004908-9 | 06/15/2018 | KMM | $ 22,903.71 | $ - | $ 837,088.49 | $ 859,992.20 | 6/17/13 - 7/8/13 | 9/4/12 - 9/18/12 |
| H52-0005022-8 | 07/05/2018 | KMM | $ 22,083.28 | $ - | $ 837,088.54 | $ 859,171.82 | 7/8/13 - 7/22/13 | 10/12/12 - 6/2/13 |
| H52-0005024-4 | 07/10/2018 | KMM | $ 11,443.54 | $ - | $ 418,544.26 | $ 429,987.80 | 7/22/13 - 8/2/13 | 11/17/2012 - 6/26/13 |
| H52-0005035-0 | 07/27/2018 | KMM | $ 11,503.09 | $ - | $ 418,544.25 | $ 430,047.34 | 8/2/13 - 8/12/13 | 1/13/13 - 6/19/13 |
| H52-0005040-0 | 08/10/2018 | KMM | $ 11,515.02 | $ 317.79 | $ 418,544.27 | $ 430,377.08 | 8/12/13 - 8/19/13 | 1/13/13 - 6/19/13 |

| H52-0005049-1 | 08/16/2018 | KMM | $ 5,293.54 | $ 148.95 | $ 194,324.11 | $ 199,766.60 | 8/19/13 - 8/27/13 | 1/26/13 - 6/19/13 |
|---|---|---|---|---|---|---|---|---|
| H52-0005058-2 | 08/23/2018 | KMM | $ 8,206.28 | $ 228.15 | $ 194,324.11 | $ 202,758.54 | 8/27/18 - 9/3/18 | 2/23/13 - 6/19/13 |
| H52-0005074-9 | 09/06/2018 | KMM | $ 11,483.63 | $ 320.47 | $ 418,544.24 | $ 430,348.34 | 9/9/13 - 9/18/13 | 2/23/13 - 7/10/13 |
| H52-0005087-1 | 09/20/2018 | KMM | $ 23,038.66 | $ 659.45 | $ 837,088.51 | $ 860,786.62 | 9/23/13 - 10/7/13 | 2/23/13 - 9/12/13 |
| H52-0005091-3 | 10/02/2018 | KMM | $ 11,457.97 | $ 318.97 | $ 418,544.25 | $ 430,321.19 | 10/7/13 - 10/21/13 | 9/4/12 - 8/14/13 |
| H52-0005100-2 | 10/17/2018 | KMM | $ 11,537.67 | $ 318.31 | $ 418,544.25 | $ 430,400.23 | 10/21/13 - 10/28/13 | 2/23/13 - 9/18/13 |
| H52-0005110-1 | 10/25/2018 | KMM | $ 23,061.19 | $ 645.51 | $ 837,088.52 | $ 860,795.22 | 10/28/13 - 11/18/13 | 4/6/13 - 9/28/13 |
| H52-0005111-9 | 10/26/2018 | KMM | $ 11,476.32 | $ 316.99 | $ 418,544.26 | $ 430,337.57 | 11/18/13 - 11/25/13 | 4/6/13 - 9/28/13 |
| H52-0005112-7 | 11/14/2018 | KMM | $ 11,347.80 | $ 316.53 | $ 418,544.27 | $ 430,208.60 | 11/25/13 - 12/30/13 | 4/20/13 - 11/8/13 |
| H52-0005125-9 | 11/20/2018 | KMM | $ 23,080.64 | $ 641.60 | $ 837,088.52 | $ 860,810.76 | 12/9/13 - 1/7/14 | 6/19/13 - 11/8/13 |
| H52-0005133-3 | 01/03/2019 | KMM | $ 19,089.97 | $ 532.54 | $ 695,630.53 | $ 715,253.04 | 1/7/14 - 1/27/14 | 4/6/13 - 11/8/13 |
| H52-0005134-1 | 01/04/2019 | KMM | $ 23,003.15 | $ 634.40 | $ 837,088.51 | $ 860,726.06 | 1/27/14 - 2/18/14 | 4/6/13 - 11/21/13 |
| H52-0005138-2 | 02/15/2019 | KMM | $ 256.30 | $ - | $ 9,565.78 | $ 9,822.08 | 4/21/2014 | 2/6/2014 |

7. In each case, as shown in paragraph 6, the imported cigarettes, upon arriving in the United States, were admitted using Customs Form 214 into a Foreign Trade Zone (FTZ) for temporary storage, and given "nonprivileged foreign" status. No entry for consumption was filed, and no duties, taxes or fees were paid, at the time the goods were admitted to the FTZ.

8. Subsequently, the cigarettes were withdrawn from the FTZ for domestic consumption, on the dates shown in Paragraph 6. On the dates the goods were withdrawn from the FTZ for domestic consumption, King Maker Marketing filed entries for consumption with Customs and paid applicable duties, taxes and fees. The imported cigarettes were classified under Harmonized Tariff Schedule (HTS) subheading 2404.20.80, a provision covering "Cigarettes containing tobacco . . . Other [than containing clove]; paper wrapped".

9. Each of the consumption entries withdrawn from the FTZ and designated in plaintiff's drawback claims was a Type 06 entry, reflecting that the goods were withdrawn from a Foreign Trade Zone (typically, FTZ #31 in Madison, Illinois) for consumption.

10. Subsequently, King Maker Marketing came into possession of, and exported, certain other cigarettes which were also classified under HTS subheading 2402.20.80. Because the exported cigarettes were classified under the same 8 digit tariff subheading as the imported cigarettes, they qualified for substitution under the substitution unused merchandise drawback statute, 19 U.S.C. §1313(j)(2).

11. On the dates in 2018 indicated in paragraph 6, King Maker Marketing caused to be filed with Customs claims for substitution unused merchandise drawback pursuant to 19 U.S.C. §1313(j)(2). The cigarettes withdrawn from the FTZ for consumption were designated as the basis for drawback, with respect to the exported "substituted" merchandise.

12. King Maker Marketing did not file the claims until 2018 because the provision of law enacting the 8-digit HTS subheading standard for "substitutability" did not enter into force until February 26, 2018, pursuant to the drawback law changes enacted by Section 906 of the Trade Facilitation and Trade Enforcement Act of 2015, Pub. L. 114-125.

13. Section 313(j)(2) of the Tariff Act of 1930, as amended, [19 U.S.C. §1313(j)(2)], which is the best evidence of its contents, provides in pertinent part:

    (2) Subject to paragraphs (4), (5), and (6), if there is, with respect to imported merchandise on which was paid any duty, tax, or fee imposed under Federal law upon entry or importation, any other merchandise (whether imported or domestic), that—

        (A) is classifiable under the same 8-digit HTS subheading number as such imported merchandise;

        (B) is, before the close of the 5-year period beginning on the date of importation of the imported merchandise and before the drawback claim is filed, either exported or destroyed under customs supervision;

        (B) before such exportation or destruction—

        (i)    is not used within the United States, and
        (ii)   is in the possession of, including ownership while in bailment, in leased facilities, in transit to, or in any other manner under the operational control of, the party claiming drawback under this paragraph, if that party—

            (I)   is the importer of the imported merchandise, or
            (II)  received the imported merchandise, other merchandise classifiable under the same 8-digit HTS subheading number as such imported merchandise, or any combination of such imported merchandise and such other merchandise, directly or indirectly from the person who imported and paid any duties, taxes, and fees imposed under Federal law upon importation or entry and due on the imported merchandise (and any such transferred merchandise, regardless of its origin, will be treated as the imported merchandise and any retained merchandise will be treated as domestic merchandise);

then, notwithstanding any other provision of law, upon the exportation or destruction of such other merchandise an amount calculated pursuant to regulations prescribed by the Secretary of the Treasury under subsection (l) shall be refunded as drawback.

14. Customs denied the drawback claims on March 18, 2022 on the ground that they were untimely filed, asserting that the claims were not filed "before the close of the 5-year period beginning on the date of importation of the imported merchandise."

5

15. In calculating the 5-year period, Customs took as the "date of importation" the dates the imported cigarettes were admitted into a Foreign Trade Zone , rather than the dates on which the cigarettes were withdrawn from the FTZ for consumption, and consumption entries were filed, accompanied by payment of duties, taxes and fees due.

16. Plaintiff timely protested the denial of its drawback claims.

17. On June 26, 2024, plaintiff sent Customs, by certified mail, a request for accelerated disposition of its protest pursuant to 19 U.S.C. §1515(b).

18. When, within 30 days, plaintiff received no decision on its protest, the protest was deemed denied by operation of law.

19. Following the deemed denial of its protest, plaintiff timely filed this action to challenge the denial of its protest.

## COUNT I

20. Paragraphs 1 through 19 are incorporated by reference as if fully set out herein.

21. The Foreign Trade Zones Act, 19 U.S.C. §81(c), which is the best evidence of its contents, provides in relevant part:

**19 U.S.C §81(c) Exemption from Customs Law of Merchandise Brought into Foreign Trade Zone**

> Foreign and domestic merchandise of every description, except such as is prohibited by law, may, without being subject to the customs laws of the United States, except as otherwise provided in this chapter, be brought into a zone and may be stored, sold, exhibited, broken up, repacked, assembled, distributed, sorted, graded, cleaned, mixed with foreign or domestic merchandise, or otherwise manipulated, or be manufactured except as otherwise provided in this chapter, and be exported, destroyed, or sent into customs territory of the United States therefrom, in the original package or otherwise; but when foreign merchandise is so sent from a zone into customs territory of the United States it shall be subject to the laws and regulations of the United States affecting imported merchandise . . .

22. Section 101.1 of the Customs Regulations [19 C.F.R. §101.1, which is the best evidence of its contents provides in relevant part:

    > As used in this chapter, the following terms shall have the meanings indicated unless either the context in which they are used requires a different meaning or a different definition is prescribed for a particular part or portion thereof:

    > ***

    > Date of importation: "Date of importation" means, in the case of merchandise imported otherwise than by vessel, the date on which the merchandise arrives within the Customs territory of the United States. In the case of merchandise imported by vessel, "date of importation" means the date on which the vessel arrives within the limits of a port in the United States with intent then and there to unlade such merchandise.

23. The Foreign Trade Zones Act of 1934 authorized creation of a number of areas and facilities which were to be treated as though they were outside the Customs territory and to which foreign origin goods could be imported without "being subject to the Customs laws of the United States".

24. The Court of Appeals for the Federal Circuit has ruled that "a foreign trade zone is considered to be outside the Customs territory of the United States." *Nissan Motor Mfg. Corp. v. United States*, 884 F.2d 1375 (Fed. Cir. 1989). See also *Goodman Mfg. LP v. United States*, 69 F.3d 505 (Fed. Cir. 1995).

25. This Court has noted that the importation "process occurs when merchandise formally enters the Customs Territory. In the case of goods going through a [Foreign Trade Zone] (FTZ), this occurs when the merchandise leaves the FTZ and enters the United States Customs territory". *Torrington Co. v. United States*, 17 CIT 199, 210 (1993).

26. In *BMW Mfg. Inc. v. United States*, 23 CIT 641 (1999), aff'd, 241 F.2d 1357 (Fed. Cir. 2001), this Court noted that the Foreign Trade Zones Act did provide a basis to define "date of importation" differently than in 19 C.F.R. §101.1, and that admission to an FTZ is not considered "importation" into the Customs Territory of the United States for purposes of the Customs laws, including for purposes of duties and various excise taxes.

27. Section 313(j)(2) of the Tariff Act of 1930, as amended [19 U.S.C. §1313(j)(2)] is a " Customs law of the United States".

28. By counting the time the imported cigarettes were stored in a Foreign Trade Zone against the 5-year limit for filing drawback claims set out in 19 U.S.C. §1313(j)(2), Customs improperly applied a "Customs law of the United States" to merchandise stored in an FTZ.

29. The imported cigarettes designated in plaintiff's 19 U.S.C. §1313(j)(2)'s drawback claims were not properly considered "imported" until they were withdrawn from the FTZ and entered for consumption into the United States.

30. Plaintiff's drawback claims were all filed within 5 years from the importation of the designated merchandise and thus were timely filed, and substituted goods were exported prior to the expiration of that 5 year period. Accordingly, CBP erred, as a matter of law, in denying plaintiff's drawback claims as untimely filed.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays that this Court enter judgment in its favor; and that the Court order the appropriate Customs officer to reliquidate plaintiff's drawback claims with payment of drawback, together with interest as provided by law; and providing plaintiff such further and additional relief as this Court may deem just.

Respectfully submitted,

/s/ John M. Peterson
John M. Peterson
Richard F. O'Neill
Patrick B. Klein
NEVILLE PETERSON LLP
*Counsel to King Maker Marketing Inc.*
One Exchange Plaza at 55 Broadway
New York, New York 10006
(212) 635-2730
(212) 635-0113 (Fax)

August __2__, 2024