UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE

| | | |
|---|---|---|
| KING MAKER MARKETING, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Court No. 24-00134 |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## **ORDER**

Upon consideration of defendant's motion to dismiss, and upon all other papers and proceedings had herein, it is hereby

ORDERED that defendant's motion is granted; and it is further

ORDERED that the complaint filed in this action is dismissed with prejudice.


Dated: _____
        New York, New York                    _____
                                              TIMOTHY M. REIF, JUDGE

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| KING MAKER MARKETING, INC., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :    Court No. 24-00134 |
| | : |
| UNITED STATES, | : |
| | : |
| Defendant. | : |
| | : |

**DEFENDANT'S MOTION TO DISMISS**

Defendant, United States (the Government), pursuant to Rule 12(b)(6) of the Rules of the United States Court of International Trade, respectfully moves to dismiss plaintiff's complaint on the grounds set forth in the memorandum accompanying this motion.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:    /s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

*OF COUNSEL*:                    /s/ Beverly A. Farrell
SABAHAT CHAUDHARY          BEVERLY A. FARRELL
Office of Assistant Chief Counsel      Senior Trial Attorney
International Trade Litigation         Department of Justice, Civil Division
U.S. Customs and Border Protection    Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
Tel.: (212) 264-0483 or 9230
Attorneys for Defendant

Dated: November 27, 2024

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE

| | | |
|---|---|---|
| KING MAKER MARKETING, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Court No. 24-00134 |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO**
**STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

*OF COUNSEL*:
SABAHAT CHAUDHARY
Office of Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

BEVERLY A. FARRELL
Senior Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
Tel.: (212) 264-0483 or 9230
Attorneys for Defendant

Dated: November 27, 2024

## TABLE OF CONTENTS

QUESTION PRESENTED ................................................................................................. 1

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 4

The Allegations in the Complaint ................................................................................ 4

ARGUMENT ................................................................................................................. 7

I.    STANDARD OF REVIEW ................................................................................. 7

II.   THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM
      AGAINST THE GOVERNMENT BECAUSE, BASED ON THE PLAIN LANGUAGE
      OF SECTIONS 1313(j)(2) AND 1313(r)(1), PLAINTIFF'S DRAWBACK CLAIMS
      WERE UNTIMELY FILED ................................................................................. 8

      A.    The Common Meaning Of The Terms Imported And Importation ...................... 9

      B.    The Foreign Trade Zone Act Does Not Support Plaintiff's Position .................. 12

      C.    The Complaint Fails To State A Claim For Relief ........................................ 15

CONCLUSION ............................................................................................................. 16

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*A&D Auto Sales, Inc. v. United States,*
  748 F.3d 1142 (Fed. Cir. 2014) ........................................................................ 8

*Amcor Flexibles Singen GMBH v. United States,*
  425 F. Supp. 3d 1287 (Ct. Int'l Trade 2020) ................................................. 10

*Arunachalam v. Int'l Business Machines Corp.,*
  759 Fed. Appx. 927 (Fed. Cir. 2019) ............................................................... 7

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .................................................................................. 7, 15

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ............................................................................ 7, 8, 15

*BMW Mfg. Corp. v. United States,*
  241 F.3d 1357 (Fed. Cir. 2001) ..................................................................... 14

*Connecticut Nat'l. Bank v. Germain,*
  503 U.S. 249 (1992) ....................................................................................... 12

*Cunard S.S. Co. v. Mellon,*
  262 U.S. 100 (1923) ................................................................................ 10, 13

*Estado de Sinaloa, A.C. v. United States,*
  459 F. Supp. 3d 1354 (Ct. Int'l Trade 2020) ................................................... 8

*Franklin v. Curry,*
  738 F.3d 1246 (11th Cir. 2013) ...................................................................... 15

*Goodman Mfg. LP v. United States,*
  69 F.3d 505 (Fed. Cir. 1995) ..................................................................... 13-14

*Henry Hollander Co. v. United States,*
  22 C.C.P.A. 645 (1935) .................................................................................. 11

*Nat'l Ass'n of Manufacturers v. Dep't of Treasury,*
  10 F.4th 1279 (Fed. Cir. 2021) ................................................................. 5, 11

*Nat'l Ass'n of Manufacturers v. United States Dep't of Treasury,*
  427 F. Supp. 3d 1362 (Ct. Int'l Trade) ............................................................ 5

*Nat'l Ass'n of Manufacturers v. United States Dep't of the Treasury*,
   432 F. Supp. 3d 1381 (Ct. Int'l Trade 2020) ................................................ 5

*Nissan Motor MMfg. Corp. v. United States*,
   884 F.2d 1375 (Fed. Cir. 1989) ............................................................... 13-14

*Shell Oil Co. v. United States*,
   688 F.3d 1376 (Fed. Cir. 2012) ...................................................................... 12

*Swan & Finch Co. v. United States*,
   190 U.S. 143 (1903) ........................................................................................ 12

*Titanium Metals Corp. v. United States*,
   901 F. Supp. 362 (Ct. Int'l Trade 1995) ....................................................... 10

*Torrington Co. v. United States*,
   17 C.I.T. 199 (1993) ................................................................................... 14-15

*U.S. v. Maverick Mktg., LLC*,
   322 F. Supp. 3d 1373 (Ct. Intl. Trade 2018) .................................................. 5

*United States v. Commodities Export Co*.,
   733 F. Supp. 109 (Ct. Int'l. Trade 1990) .......................................... 3-4, 10, 13


**Harmonized Tariff Schedule of the United States (HTSUS)**

Subheading 2402.20.80 ........................................................................................ 5

**Statutes**

19 U.S.C § 81a (Foreign Trade Zones Act of 1934) .......................................... 8

19 U.S.C. § 1313 .................................................................................................. 9

19 U.S.C. § 1313(c)(1)(D) ................................................................................. 10

19 U.S.C. § 1313(d) .............................................................................................. 4

19 U.S.C. § 1313(j)(2) ................................................................................ *passim*

19 U.S.C. § 1313(j)(2)(B) .................................................................................. 12

19 U.S.C. § 1313(p)(2)(E) ................................................................................. 10

19 U.S.C. § 1313(r)(1) ............................................................................ 3, 8, 9, 15

19 U.S.C. § 1484(a) ................................................................................... 14

19 U.S.C. § 1484(a)(1)(A) ......................................................................... 10

19 U.S.C. § 1484(a)(1)(B) ......................................................................... 10

19 U.S.C. § 1514(a) ..................................................................................... 6

19 U.S.C. § 1515(b) ..................................................................................... 6

19 U.S.C. § 1557 .......................................................................................... 9

26 U.S.C. § 5703(a)(1) ................................................................................. 5

28 U.S.C. 1581(a) ........................................................................................ 6

## Rules and Regulations

USCIT Rule 12(b)(6) .......................................................................... 1, 6, 7, 16

19 C.F.R. § 146.32(a)(1) ……………………………………………………………3

19 C.F.R. § 174.22 ....................................................................................... 6

19 C.F.R. § 190.2 ......................................................................................... 4

19 C.F.R. § 190.51(a)................................................................................... 8

## Other Authorities

*CBP Form 214* - Application for Foreign-Trade Zone Admission and/or Status Designation
(last accessed on 11/26/2024).
https://www.cbp.gov/document/forms/form-214-application-foreign-trade-zone-admission-
andor-status-designation ............................................................................. 3

DRAWBACK: DATE OF IMPORTATION FOR DRAWBACK PURPOSES.
13 Cust. B. & Dec. 1019, 1978 WL 30020 (July 7, 1978) .................................. 4, 11

*Importation*, Bryan A. Garner, GARNER'S MODERN ENGLISH USAGE, 493 (4th ed. 2018) ..... 4, 10

S. Rep. No. 81-1107, at 3-4 (1949)........................................................... 14

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE

| | | |
|---|---|---|
| KING MAKER MARKETING, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Court No. 24-00134 |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS FOR FAILURE TO
STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

Pursuant to Rule 12(b)(6) of the Rules of the United States Court of International Trade (CIT), defendant, United States (the Government), respectfully requests that the Court dismiss the action commenced by plaintiff, King Maker Marketing, Inc. (King Maker), for failure to state a claim on which relief can be granted.

**QUESTION PRESENTED**

1.  Whether plaintiff's action should be dismissed pursuant to CIT Rule 12(b)(6) for failing to state a claim upon which relief may be granted when the plain terms of the drawback statute have not been met.

**INTRODUCTION**

This case concerns a privilege known as "drawback." Drawback is the payment by U.S. Customs and Border Protection (CBP) to a qualifying claimant of up to 99% of the taxes, duties, and fees paid on imported goods when the same or substitute goods are exported or are used in the manufacture of products that are exported, or when certain other specified conditions are met. *See generally* 19 U.S.C. § 1313. Drawback encourages domestic manufacturing and promotes

fair competition with overseas competitors by alleviating the financial burdens of entities that import and export goods. Here, King Maker seeks to avail itself of the benefit of substitution drawback under 19 U.S.C. § 1313(j)(2)[1] and contends that U.S. Customs and Border Protection

---

[1] Section 1313(j)(2) provides:

> (2)Subject to paragraphs (4), (5), and (6), if there is, with respect to imported merchandise on which was paid any duty, tax, or fee imposed under Federal law upon entry or importation, any other merchandise (whether imported or domestic), that—
>
> (A)is classifiable under the same 8-digit HTS subheading number as such imported merchandise;
>
> (B)is, before the close of the 5-year period beginning on the date of importation of the imported merchandise and before the drawback claim is filed, either exported or destroyed under customs supervision; and
>
> (C)before such exportation or destruction—
>
> (i)is not used within the United States, and
>
> (ii)is in the possession of, including ownership while in bailment, in leased facilities, in transit to, or in any other manner under the operational control of, the party claiming drawback under this paragraph, if that party—
>
> (I)is the importer of the imported merchandise, or
>
> (II)received the imported merchandise, other merchandise classifiable under the same 8-digit HTS subheading number as such imported merchandise, or any combination of such imported merchandise and such other merchandise, directly or indirectly from the person who imported and paid any duties, taxes, and fees imposed under Federal law upon importation or entry or due on the imported merchandise (and any such transferred merchandise, regardless of its origin, will be treated as the imported merchandise and any retained merchandise will be treated as domestic merchandise);
>
> then, notwithstanding any other provision of law, upon the exportation or destruction of such other merchandise an amount calculated pursuant to regulations prescribed by the Secretary of the Treasury under subsection (l) shall be refunded as drawback. Notwithstanding subparagraph (A), drawback shall be allowed under this paragraph with respect to wine if the imported wine and the exported wine are of the same color and the price variation between the imported wine and the exported wine does not exceed 50 percent. Transfers of merchandise may be evidenced by business records kept in the normal course of business and no additional certificates of transfer shall be required.

(CBP or Customs) erred when it denied King Maker's drawback claims on March 18, 2022 as untimely because the claims had not been filed '"before the close of the 5-year period beginning on the date of importation of the imported merchandise."' Section 1313(r)(1) provides that "[a] drawback entry shall be filed or applied for, as applicable, not later than 5 years after the date on which merchandise on which drawback is claimed was imported." If a claim is not completed within the 5-year period, it will be considered abandoned. *Id.*

As reflected in the chart located at ECF No. 12-1 at 6,[2] King Maker concedes that the "Actual Import Periods from CBP 214s"[3] are all greater than five years before the filing dates of the twenty-one drawback entries at issue in this action. Accordingly, the only question at issue in this matter is a legal one: what does "the date of importation of the imported merchandise" mean in the context of section 1313(j)(2) and section 1313(r)(1).

For the reasons discussed below, the Government shows that the long-standing and proper interpretation of "date of importation" for a drawback claim is the date that the merchandise is brought into the United States from a foreign country, not when it is entered for

---

[2] The complaint does not list dates of importation for the designated import entries. However, as discussed below in the standard of review, the Court may consider matters incorporated by reference or integral to a claim. Accordingly, in its protest, plaintiff includes a chart substantially the same as that set forth in paragraph 6 of its complaint. The protest chart differs from the complaint's chart by (i) including a column for HMT (Harbor Maintenance Tax) not present in the complaint chart; (ii) designating the complaint's column "Dates goods entered for consumption" as "Designated Import Period"; and (iii) designating the complaint's column "Dates goods admitted into FTZ" as "Actual Import Period from CBP 214s." *Compare* ECF No. 12-1 at 6 with Compl. ¶ 6.

[3] A CBP Form 214 is an application for foreign-trade zone admission and/or status designation. *See* 19 C.F.R. § 146.32(a)(1) ("Merchandise may be admitted into a zone only upon application on a uniquely and sequentially numbered CBP Form 214 ('Application for Foreign Trade Zone Admission and/or Status Designation) and the issuance of a permit by the port director')"). *See also* https://www.cbp.gov/document/forms/form-214-application-foreign-trade-zone-admission-andor-status-designation.

consumption from a foreign-trade zone.  *See*, *e.g.*, 13 Cust. B. & Dec. 1019 (Customs), 1978 WL

30020 (July 7, 1978); *United States v. Commodities Export Co.*, 733 F. Supp. 109, 112 (Ct. Int'l.

Trade 1990) ("Black's Law Dictionary defines importation as 'the act of bringing goods and

merchandise into a country from a foreign country.'"); Bryan A. Garner, GARNER'S MODERN

ENGLISH USAGE, 493 (4th ed. 2018) ("A product that comes into a country from abroad is an

*import*.  The process of bringing it in is *importation*.") (Emphasis in original).

When the facts alleged in a complaint, read in the light most favorable to plaintiff, fail to

support a claim for which relief is available, that complaint must be dismissed under Rule

12(b)(6) of this Court.  The facts alleged by King Maker in its complaint do not support a claim

for relief.  Therefore, the Court should dismiss the complaint with prejudice.

## BACKGROUND

**The Allegations in the Complaint**

This action concerns 21 substitution drawback[4] claims made by the importer King Maker

at the port of New York, NY on various dates between May 5, 2018 and February 15, 2019 with

designated import entries of paper-wrapped cigarettes from India that plaintiff alleges were

imported and admitted into a Foreign Trade Zone (FTZ) between September 4, 2012 and

February 6, 2014.  Compl. ¶ 6 (Chart).  King Maker also alleges that it paid Federal Excise Taxes

---

[4] As discussed more fully below, drawback authorized for payment by CBP is defined as:

the refund, in whole or in part, of the duties, taxes, and/or fees paid on imported
merchandise, which were imposed under Federal law upon entry or importation,
and the refund of internal revenue taxes paid on domestic alcohol as prescribed in
19 U.S.C. 1313(d).  More broadly, drawback also includes the refund or remission
of other excise taxes pursuant to other provisions of law.

19 C.F.R. § 190.2.

(FET) and/or Merchandising Processing Fees on the designated import entries. *Id.*[5] King Maker is the drawback claimant and the importer of record of the designated entries. Compl. ¶¶ 4, 6.

The imported goods were withdrawn from the FTZ for consumption and entered as Type 06 Foreign Trade Zone consumption entries during the "Designated Import Period"[6] between May 6, 2013 and September 3, 2018. Compl. ¶¶6-8. After being withdrawn from the FTZ, the cigarettes covered by the twenty-one drawback entries were entered and classified under subheading 2402.20.80 of the Harmonized Tariff Schedule of the United States (HTSUS), and all duties, taxes and fees were paid by King Maker. Compl. ¶ 8.

After entry of the FTZ goods, King Maker "came into possession of, and exported," other cigarettes also classified under subheading 2402.20.80, HTSUS. These are the goods King Maker identified as substitution merchandise for the cigarettes withdrawn from the FTZ to qualify for drawback under section 1313(j)(2) as substitution unused merchandise. Compl. ¶¶ 10, 11. King Maker filed its drawback claims between May 5, 2018 and February 15, 2019.[7]

On March 18, 2022, CBP denied King Maker's drawback claims because the claims were not filed "'before the close of the 5-year period beginning on the date of importation of the

---

[5] The bulk of plaintiff's claimed drawback refund is for Federal Excise Tax (FET) on tobacco for which importers are liable pursuant to 26 U.S.C. § 5703(a)(1), which CBP collects, and which is paid based on the date of entry into the customs territory of the United States. *U.S. v. Maverick Mktg., LLC*, 322 F. Supp. 3d 1373, 1377-79 (Ct. Intl. Trade 2018) (unpaid FET on tobacco are considered customs duties for the purpose of jurisdiction).

[6] *See* ECF No. 12-1 at 6.

[7] On July 24, 2020, the liquidation of the drawback claims was suspended pursuant to CIT Court No. 19-00053. *Nat'l. Ass'n. of Manufacturers v. U.S. Dep't. of Treas.*, 427 F. Supp. 3d 1362, 1364–65 (Ct. Int'l. Trade 2020), *judgment entered sub nom. Nat'l. Ass'n. of Manufacturers v. U.S. Dep't. of the Treas.*, 432 F. Supp. 3d 1381 (Ct. Int'l. Trade 2020), and *aff'd sub nom. Nat'l. Ass'n. of Manufacturers v. Dep't. of Treas.*, 10 F.4th 1279 (Fed. Cir. 2021) (invalidating certain CBP regulations that "prevent[ed] a domestically produced exported good, that would have been

imported merchandise.'"  Compl. ¶ 14.  CBP used as the "date of importation" referenced in section 1313(j)(2) the dates the imported cigarettes were admitted into the FTZ and not when they were withdrawn from the FTZ for consumption and consumption entries filed with the payment of duties, taxes, and fees.  Compl. ¶ 15.

On September 6, 2022, King Maker filed Protest No. 1001-22-101163[8] against the denial of the drawback claims, which was timely filed within 180 days of the liquidation of the drawback entries.  *See* ECF 12-1; 19 U.S.C. § 1514(a).  Compl. ¶ 16.  On or about June 26, 2024, King Maker requested by certified mail the accelerated disposition of Protest No. 1001-22-101163 pursuant to 19 U.S.C. § 1515(b) and 19 C.F.R. § 174.22.  *See* Compl. ¶ 17.  The protest was not decided within thirty days following the date of the mailing of the request, and, as such, was deemed denied on the thirtieth day following the mailing of the request, July 27, 2024, by operation of law.  *See* Compl. ¶ 18.

On August 2, 2024, King Maker timely commenced this action under 28 U.S.C. § 1581(a) by filing a summons and complaint.  ECF Nos. 1, 5; Compl. ¶ 19.  Through this action, King Maker seeks a judgment "in its favor; and that the Court order the appropriate Customs officer to reliquidate plaintiff's drawback claims with payment of drawback, together with

---

subject to the excise tax if made available for domestic use, from satisfying a claim for substitution drawback under the language of 19 U.S.C. § 1313(j)(2).")  CBP suspended all drawback claims that indicated a drawback tax in CBP's records.

[8] Included in its protest memorandum, King Maker "request[ed] that decision on this protest be suspended pending the Customs Headquarters Application for Further Review decision in respect of KMM's protest 1001-22-101152."  ECF No. 12-1 at 5.

interest as provided by law; and providing plaintiff such further and additional relief as this Court may deem just."  Compl. at p. 9.

## ARGUMENT

### I.    STANDARD OF REVIEW

CIT Rule 12(b)(6) provides that "a party may assert the following defense[] by motion: . . . (6) failure to state a claim upon which relief can be granted."  Such a motion "must be made before pleading if a responsive pleading is allowed.  *Id*.  A motion to dismiss an action pursuant to Rule 12(b)(6) is "granted if the court, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, concludes that those allegations 'could not raise a claim of entitlement to relief.'"  *Arunachalam v. Int'l Business Machines Corp.*, 759 Fed. Appx. 927, 931 (Fed. Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  A claim has facial plausibility when it "raise[s] a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555 (internal citation omitted).  "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 545; *see also Iqbal*, 556 U.S. at 662 ("[T]he pleading standard Rule 8 announces . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").

The complaint must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing

*Twombly*, 550 U.S. at 556).  Determining whether the factual pleading standard has been met is a

"context-specific task that requires the reviewing court to draw on its judicial experience and

common sense."  *Id.* at 679.  When reviewing a motion to dismiss pursuant to Rule 12(b)(6), the

Court considers the allegations in the complaint as well as documents "'incorporated by

reference or integral to the claim, items subject to judicial notice, [and] matters of public

record.'"  *Confederación Asociaciones Agricolas del Estado de Sinaloa, A.C. v. United States*,

459 F. Supp. 3d 1354, 1361 (Ct. Int'l Trade 2020) (quoting *A&D Auto Sales, Inc. v. United

States*, 748 F.3d 1142, 1147 (Fed. Cir. 2014)).[9]

## II.    THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM AGAINST THE GOVERNMENT BECAUSE, BASED ON THE PLAIN LANGUAGE OF SECTIONS 1313(j)(2) AND 1313(r)(1), PLAINTIFF'S DRAWBACK CLAIMS WERE UNTIMELY FILED

As noted above, King Maker concedes that the twenty-one drawback claims at issue were

filed five years after the "Actual Import Period from CBP 214s" and therefore the drawback

claims were late and abandoned.  *See* ECF 12-1 at 6.  Thus, for purposes of this motion to

dismiss, the only question to be decided is whether, under the Foreign Trade Zones Act of 1934,

goods imported into the United States and entered into A FTZ somehow lose their status as

"importations" under the drawback statute and only become "importations" when withdrawn

from the FTZ as King Maker contends.[10]  *See* Compl. ¶ 29 ("[t]he imported cigarettes designated

---

[9] Here, it is proper for the Court to consider ECF 12-1, ECF 12-2, ECF 16-1, and ECF 16-2, which reflect, among other things, the drawback requests, submissions from King Maker's broker including statements that the drawback submissions were not timely, and the protest and protest memorandum.

[10] At this time, the Government does not take a position on the merits of whether King Maker's drawback claims could qualify for unused merchandise substitution drawback based on the same 8-digit HTSUS number and otherwise whether its claims are complete.  *See, e.g.,* 19 C.F.R. § 190.51(a) (Completion of drawback claims).

in plaintiffs 19 U.S.C. § 1313(j)(2)'s drawback claims were not properly considered 'imported' until they were withdrawn from the FTZ and entered for consumption into the United States."). For the reasons discussed below, the answer is no. Accordingly, the 21 drawback claims at issue were untimely, CBP properly refused payment of drawback, and the complaint and action should be dismissed.

### A.    The Common Meaning Of The Terms Imported And Importation

The plain language of the drawback provision that King Maker invokes, section 1313(j)(2), requires the exportation or destruction of the other merchandise classifiable under the same 8-digit HTS subheading number as the *imported merchandise* before the close of the 5-year period beginning *on the date of importation* of *the imported merchandise*. Notably missing from this provision is any reference to entry or withdrawal for consumption from the FTZ as the starting point to measure the 5-year period. Similarly, section 1313(r)(1) requires that a drawback entry be filed or applied for "not later than 5 years after the date on which merchandise on which drawback is claimed was imported." Further, the 5-year time limit for storing merchandise in bonded warehouses also starts from date of importation. 19 U.S.C. § 1557. Thus, the plain language of the statute reveals Congress' intent that "the date of importation" of the imported merchandise is to be used to begin the 5-year period for unused merchandise drawback claims.

Moreover, that Congress intentionally used the date of *importation* for the 5-year period is reflected in its differentiation between entry or importation in section 1313(j)(1) ("[i]f imported merchandise, on which was paid any duty, tax, or fee imposed under Federal law upon *entry or importation* . . . .")  If "importation" and "entry" were synonymous then there would

have been no need to use both terms.[11]  And to equate these two terms "would contravene the interpretive canon against surplusage—the idea that all [terms] should be given effect and none should be given an interpretation to have no consequence." *Amcor Flexibles Singen GMBH v. United States*, 425 F. Supp. 3d 1287, 1299 (Ct. Int'l Trade 2020).

Instead, "[t]he general term 'entry' has been defined only as the filing of 'documentation ... necessary to ... determine whether the merchandise may be released from customs custody." *Titanium Metals Corp. v. United States*, 901 F. Supp. 362, 364 (Ct. Int'l Trade 1995) (citing 19 U.S.C. § 1484(a)(1)(A)).  "Completion of an entry involves filing the declared value, classification and rate of duty applicable to the merchandise." *Id*. at 364 n.6 (citing 1484(a)(1)(B)).  Further, within 10 days of the release of the cargo, the importer must pay the estimated duties on their entered goods.

In contrast, importation is defined as the act of bringing merchandise into a country from a foreign country.  *United States v. Commodities Export Co.*, 733 F. Supp. 109, 112 (Ct. Int'l. Trade 1990) ("Black's Law Dictionary defines importation as 'the act of bringing goods and merchandise into a country from a foreign country.'"); Bryan A. Garner, GARNER'S MODERN ENGLISH USAGE, 493 (4th ed. 2018) ("A product that comes into a country from abroad is an *import*.  The process of bringing it in is *importation*.") (emphasis in original); *see also Cunard S.S. Co. v. Mellon*, 262 U.S. 100, 121, 122 (1923) (a word like importation "should be taken in [its] ordinary sense" and "consists in bringing an article into a country from the outside" "regardless of the mode in which it is effected" and "[e]ntry through a custom house is not the

---

[11] This distinction is further reflected elsewhere in the statute.  For example, section 1313 specifies the "date of importation or withdrawal" for the 5-year limit on drawback for merchandise not conforming to samples or specification (19 U.S.C. § 1313(c)(1)(D)) and "date of entry" for the 180-day time period for the substitution of finished petroleum derivatives from (19 U.S.C. § 1313(p)(2)(E)).

essence of the act.").  Logically, before one could make an entry for consumption, one would have to first import the goods that would be subject to entry.

The issue of the date of importation for drawback purposes was considered by the United States Customs Service in 1978 in a Customs Service Decision titled DRAWBACK: DATE OF IMPORTATION FOR DRAWBACK PURPOSES.  13 Cust. B. & Dec. 1019, 1978 WL 30020 (July 7, 1978).  In this Customs Service Decision, Customs determined that the five-year time limit for exportation to qualify for payment of drawback does not commence when merchandise is withdrawn for consumption from a warehouse.  Instead, "the importation occurs before the merchandise is entered for consumption or warehouse."  *Id.* at 1020; 1978 WL 30020, *1.  Thus, "[t]he withdrawal from warehouse does not establish the date of importation for drawback purposes."  *Id.*  In reaching this decision, Customs relied on judicial precedent such as *Henry Hollander Co. v. United States*, 22 C.C.P.A. 645 (1935) ("Generally, however, and unless the contrary clearly appears, the word 'importation' means 'the bringing of goods within the jurisdictional limits of the United States with the intention to unlade them.'") (Citation omitted.).  *Id.*

The Court of Appeals for the Federal Circuit has also recognized the distinction between entry and importation.  In *National Association of Manufacturers v. Department of Treasury*, 10 F.4th 1279, 1282 n.3, the appellate court explained:

> An imported good is subject to tariffs, fees, and taxes upon "entry" in the United States.  A good is deemed not to enter the United States if upon importation it is placed in a customs bonded warehouse.  If the good is taken from a bonded warehouse and sold or consumed in the United States, the good has entered the United States and may be subject to tariffs and fees.  But if the good is exported from a warehouse, no import duties are paid.

The drawback statute unambiguously states that the substituted merchandise must be exported or destroyed "before the close of the 5-year period beginning on the date of importation of the imported merchandise," not when the merchandise was withdrawn from the FTZ and entered for consumption.  19 U.S.C. § 1313(j)(2)(B).  "When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Connecticut Nat'l. Bank v. Germain*, 503 U.S. 249, 254 (1992).

Finally, we are unaware of any legislative history for either the current drawback statute or the predecessor drawback laws to indicate that Congress intended for the phrase "date of importation" to have a different meaning for imported merchandise admitted to a FTZ.

### B.    The Foreign Trade Zone Act Does Not Support Plaintiff's Position

"As an initial matter, drawbacks are a privilege, not a right." *Shell Oil Co. v. United States*, 688 F.3d 1376, 1382 (Fed. Cir. 2012).  As such, the drawback statute should "be construed in favor of the government and against the party claiming the grant." *Id.* (quoting *Swan & Finch Co. v. United States*, 190 U.S. 143, 146 (1903)).  Accordingly, the Court should decline King Maker's invitation to ignore the plain language of section 1313(j)(2) and (r)(1), which unambiguously ties the five-year period to the importation of the imported merchandise prior to its admission to the FTZ, and adopt a wholly unsupported position that withdrawal for consumption resulting in an entry is the same as importation.  For the reasons we provided above, this is a misapprehension of the law.

In its complaint, King Maker strains to avoid the plain language of sections 1313(j)(2) and (r)(1) by seeking to conflate the term "entry" with "importation."  However, these terms are distinct and cannot be viewed as synonymous.  King Maker recites several times in its complaint, as though magical, that the admission of its imported merchandise into a FTZ means that it is not

subject to the Customs laws of the United States and is outside the Customs territory of the United States. Plaintiff then contends that by counting the time its imported merchandise was in the FTZ that CBP "improperly applied a 'Customs law of the United States' to merchandise stored in an FTZ." Compl. ¶ 28.

Plaintiff's contention is illogical given that the application of sections 1313(j)(2) and (r)(1) to King Maker's proposed drawback claims are to merchandise that was withdrawn for consumption from the FTZ from May 6, 2013 to April 21, 2014 but imported from September 4, 2012 to February 6, 2014. Compl. ¶ 6. Thus, CBP's determination that King Maker's drawback claims are untimely is consistent with the plain language of the substitution drawback statute, the common meaning of importation, and the admonition that the privilege of drawback should be construed in favor of the Government and against King Maker.

Similarly illogical is King Maker's contention that "[t]he imported cigarettes designated in plaintiff's 19 U.S.C. § 1313(j)(2)'s drawback claims were not properly considered 'imported' until they were withdrawn from the FTZ and entered for consumption into the United States." Compl. ¶ 29. Indeed, the fatal flaw in King Maker's position is built into this allegation: the cigarettes have been "imported" since they first came to the United States from abroad and were not "imported" when "entered" for consumption. *See Cunard*, 262 U.S. at 121, 122; *Commodities*, 733 F. Supp. at 112. Nor do the cases cited by King Maker in its complaint at paragraphs 24, 25, and 26 provide any solace for its unfounded argument that entries for consumption are in fact importations.

For example, *Nissan Motor Mfg. Corp. v. United States*, 884 F.2d 1375, 1376 (Fed. Cir. 1989) and *Goodman Mfg. LP v. United States*, 69 F.3d 505 (Fed. Cir. 1995) listed in paragraph 24 of the complaint stand for the unremarkable proposition that "a foreign trade zone is

considered to be outside the Customs territory of the United States." While this may be true for certain purposes, the question is for what purpose? The Federal Circuit has explained that the benefit of being in a FTZ and outside the Customs territory is that imported merchandise in the FTZ does not have to pay the estimated duties, taxes and fees required of formal entries. *See* Compl. ¶ 26 referencing *BMW Mfg. Corp. v. United States*, 241 F.3d 1357, 1363 (Fed. Cir. 2001), which cites to S. Rep. No. 81-1107, at 3-4 (1949) and explains that "the legislative history of § 81c(a) demonstrates that the exemption therein is targeted at duties and taxes that attach upon formal entry into the United States customs territory." This further illustrates the distinction between importation versus an entry for consumption—an FTZ admission may avoid the payment of duties until there is an entry for consumption, but it does not avoid the fact that an importation has occurred.

Finally, paragraph 25 of King Maker's complaint cites *Torrington Co. v. United States*, 17 C.I.T. 199, 210 (1993) to argue that "the importation 'process occurs when merchandise formally enters the Customs Territory.'" But Torrington states that:

> this Court finds that at the time of the imports in question there was no statute or regulation that required that antidumping duties be imposed on merchandise imported into a FTZ until such time as the merchandise enters the Customs territory of the U.S. In addition, there is no reason to believe that the use of the term entry in the antidumping duty statute refers to anything other than formal entry of merchandise into the U.S. Customs territory. The antidumping duty statute is part of the Tariff Act of 1930, as amended, as are the regular customs laws of the U.S. which define entry as the process of filing documentation with Customs to allow Customs to determine whether the subject merchandise should be released from Customs' custody and, if so, what duties are due. 19 U.S.C. § 1484(a). This process occurs when merchandise formally enters the U.S. Customs territory. **In the case of imports going through a FTZ**, this occurs when the merchandise leaves the FTZ and enters the U.S. Customs territory.

Thus, *Torrington* supports the Government's position that the merchandise admitted to a FTZ is in fact an "import." Therefore, CBP's determination that the 5-year period cited in sections 1313(j)(2) and (r)(1) runs from the date of importation of the imported merchandise admitted to the FTZ is correct. Accordingly, CBP's determination that the 21 drawback claims are untimely should be affirmed and this action dismissed.

### C.    The Complaint Fails To State A Claim For Relief

Dismissal is required when a complaint fails to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The "plausibility standard is met only where the facts alleged enable 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). King Maker contends that CBP's misconduct was basing the five-year limit for filing a drawback claim on the date of importation of the foreign merchandise rather than on its withdrawal from the FTZ.

Here, the "plausibility standard" pronounced by the Supreme Court in *Iqbal*, is not satisfied because the facts alleged by King Maker in its complaint do not support drawing an inference that CBP improperly determined that King Maker's drawback claims were untimely when they were submitted "later than 5 years after the date on which merchandise on which drawback is claimed was imported." 19 U.S.C. § 1313(r)(1). "Claims not completed within the 5-year period shall be considered abandoned." *Id.*

For the reasons discussed above, the allegations made in King Maker's complaint have failed to state a claim against the Government upon which this Court can grant relief. Therefore, this action should be dismissed.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court dismiss this action with

prejudice pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:     /s/ Justin R. Miller
        JUSTIN R. MILLER
        Attorney-In-Charge
        International Trade Field Office

*OF COUNSEL*:                                    /s/ Beverly A. Farrell
SABAHAT CHAUDHARY                                BEVERLY A. FARRELL
Office of Assistant Chief Counsel                Senior Trial Attorney
International Trade Litigation                    Department of Justice, Civil Division
U.S. Customs and Border Protection               Commercial Litigation Branch
                                                 26 Federal Plaza, Room 346
                                                 New York, New York 10278
                                                 Tel.: (212) 264-0483 or 9230
                                                 Attorneys for Defendant

Dated: November 27, 2024

16

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| KING MAKER MARKETING, INC., : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Court No. 24-00134 |
| : | |
| UNITED STATES, : | |
| : | |
| Defendant. : | |
| : | |

## **CERTIFICATE OF COMPLIANCE**

I, BEVERLY A. FARRELL, a Senior Trial Attorney in the Office of the Assistant

Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field

Office, who is the attorney responsible for Defendant's Memorandum of Law in Support of its

Motion to Dismiss for Failure to State a Claim, relying upon the word count feature of the word

processing program used to prepare the response, certify that this memorandum complies with

the word count limitation under the Court's chambers procedures and contains 4,916 words.

/s/ Beverly A. Farrell
Beverly A. Farrell