**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. TIMOTHY M. REIF, JUDGE**
-------------------------------------------------------------------- X
**KING MAKER MARKETING, INC.,**                          :
                                                          :
        **Plaintiff,**                    :
                                                          :
        *v.*                              :      **No. 24-cv-00134**
                                                          :
**UNITED STATES,**                                        :
                                                          :
        **Defendant.**                    :
-------------------------------------------------------------------- X


### PLAINTIFF'S BRIEF IN OPPOSIITON TO THE DEFENDANT'S MOTON TO DISMISS


NEVILLE PETERSON LLP

John M. Peterson
Richard F. O'Neill
Maria E. Celis
Patrick B. Klein
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Dated:  December 31, 2024

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS.................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................... ii

RELEVANT FACTS ........................................................................................................5

STANDARD OF REVIEW ..............................................................................................8

RELEVANT STATUTES AND REGULATIONS...........................................................8

ARGUMENT....................................................................................................................9

I.      Historically, the "Date of Importation" of Merchandise Has Been Defined as the Date
        a Vessel Arrives Within Port Limits With Intent to Unlade...............................................9

II.     Goods in Foreign Trade Zones are Considered to be Outside the Customs Territory.......11

III.    Customs Law Does Not Apply to Merchandise Stored in Foreign Trade Zones. .............14

IV.     The "Date of Importation" to Calculate the Five Year Limit in 19 U.S.C. § 1313(j) is
        the Date the Designated Goods Were Withdrawn from the FTZ for Consumption. .........18

## **TABLE OF AUTHORITIES**

**Cases**

*A.T. Cross v. Sunil Trading Corp.*, 467 F. Supp. 47 (S.D.N.Y 1979) .......................................... 12

*Aectra Ref. & Mktg Inc. v. United States*, 565 F.3 1364 (Fed. Cir. 2009)................................... 13

*Arbor Foods v. United States*, 97 F.3d 534 (Fed. Cir. 1996)...................................................... 17

*Arnold v. United States*, 13 U.S. 104 (1815) ............................................................................... 10

*Atlantic Cleaners and Dyers v. United States*, 286 U.S. 427 (1932)........................................... 19

*Bailey v. United States*, 516 U.S. 137 (1995). ............................................................................ 19

*BMW Manufacturing Corp. v. United States*, 241 F.3d 1357 (Fed. Cir. 2001) ........................... 17

*BMW Mfg. Inc. v. United States*, 23 C.I.T. 641 (1999).......................................................... 13, 14

*Columbia Gas Dev. Corp. v. FERC*, 651 F.2d 1146 (5ᵗʰ Cir. 1987)............................................ 20

*Cunard S.S. Co. v. Mellon*, 262 U.S. 100 (1923)............................................................ 4, 10, 11

*Dubin v. United States*, 599 U.S. 110 (2023)............................................................................... 19

*Envt'l Def. v. Duke Energy Corp.*, 549 U.S. 561 (2007) ............................................................. 19

*Frazier v. McDonough*, 66 F.4ᵗʰ 1353 (Fed Cir. 2023)................................................................. 20

*G.D. Searle & Co. v. Byron Chemical Co.*, 223 F. Supp. 172 (D.N.J. 1963)............................... 12

*Goodman Mfg. LP v. United States*, 69 F.3d 505 (Fed. Cir. 1995) .............................................. 12

*Haber v. United States*, 831 F.2d 1051 (Fed. Cir. 1987). ........................................................... 8

*Interport Inc. v. Magaw*, 135 F.3d 826 (D.C. Cir. 1998).......................................................... 13, 14

*John V. Carr Inc. v. United States*, 58 Cust. Ct. 809 (Cust. Ct. 1967) .................................. 16, 18

*Klockner Inc. v. United States*, 8 C.I.T. 3 (1984) .......................................................................... 12

*Loper Bright Ent. v. Raimondo*, 144 S. Ct. 2244 (2024) ............................................................. 4

*National Association of Manufacturers v. United States*, 10 F.4ᵗʰ 1279 (Fed. Cir. 2021)........ 8, 21

*Nissan Motor Mfg. Corp. v. United States*, 884 F.2d 1375 (Fed. Cir. 1989)............................... 12

*Perots v. United States*, 19 F. Cas. 258 (Circuit Court, D. PA 1816)..................................... 10, 11

*Pitsker v. Office of Personnel Management*, 234 F.3d 1378 (Fed. Cir. 2000) ............................. 20

*R.J. Reynolds Tobacco Co. v. Durham County*, 479 U.S. 130 (1986)........................................ 16

*Second Nature Designs Ltd. v. United States*, 654 F. Supp. 3d 1301 (Ct. Int'l Tr. 2023).............. 8

*Torrington Co. v. United States*, 17 C.I.T. 199 (1993) ................................................................. 12

*Tropicana Prods. v. United States*, 16 C.I.T. 155 (1992). ........................................................... 17

*United States v. Borden & Co.*, 308 U.S. 188 (1939).................................................................. 19

*United States v. Commodities Export Corp.*, 14 C.I.T. 166 (1990) ............................................ 16

*United States v. Greenlight Organic Inc.*, 419 F. Supp. 3d 1298 (Ct. Int'l Tr. 2019). .................. 8

*Xerox v. Harris County*, 459 U.S. 145 (1982) ............................................................................. 16

*Xianli Zhang v. United States*, 640 F.3d 1358 (Fed. Cir. 2011) ................................................. 20

*Yates v. United States*, 574 U.S. 528 (2015)................................................................................. 19

**Statutes**

19 U.S.C. § 1313..................................................................................................................... passim

19 U.S.C. § 1515............................................................................................................................ 7

19 U.S.C. § 1555.......................................................................................................................... 17

19 U.S.C. § 81c....................................................................................................................... passim

28 U.S.C. § 1581....................................................................................................................... 7, 8

Pub. L. 108-429. 118 Stat. 2434 (December 4, 2004) ................................................................ 13

Pub. L. 114-125, 130 Stat. 122 (February 24, 2016) ................................................................... 1

**Other Authorities**

Donald E. DeKieffer and George W. Thompson, *Political and Policy Dimensions of Foreign Trade Zones: Expansion or the Beginning of the End?* 18 Vanderbilt J. of Transnational Law 481 (1985)................................................................................................... 17

*Drawback; Date of Importation For Drawback Purposes*, 13 Cust. B. & Dec. 1019 (July 7, 1978) ........................................................................................................................ 15

**Regulations**

19 C.F.R. § 101.1 ............................................................................................................ passim

19 C.F.R. § 172.22 .................................................................................................................. 7

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. TIMOTHY M. REIF, JUDGE
------------------------------------------------------------------- X
KING MAKER MARKETING, INC.,                        :
                                                   :
            Plaintiff,                             :
                                                   :
       v.                                          :        No. 24-cv-00134
                                                   :
UNITED STATES,                                     :
                                                   :
            Defendant.                             :
------------------------------------------------------------------- X

## PLAINTIFF'S BRIEF IN OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS

In accordance with Rules 7 and 12(b)(6) of the Rules of the United States Court of International Trade "(USCIT R."), plaintiff King Maker Marketing, Inc. ("King Maker" or "KMM") opposes the Motion of defendant United States to dismiss this action for failure to state a claim upon which relief may be granted. For the reasons stated herein, plaintiff's claim for 19 U.S.C. § 1313(j)(2) substitution unused merchandise drawback was timely filed within five (5) years after the "date of importation" of the merchandise designated as the basis for drawback, as that term is properly construed for the circumstances of this case.

## INTRODUCTION

Section 313(j)(2) of the Tariff Act of 1930, 19 U.S.C. § 1313(j)(2), as amended by Section 906(e) of the Trade Facilitation and Trade Enforcement Act of 2015,[1] provides for payment of substitution unused merchandise drawback of duties and Federal Excise Taxes based upon the exportation of "substituted" merchandise which is classifiable in the same 8-digit subheading of the Harmonized Tariff Schedule ("HTS") as the imported, duty-or tax paid merchandise designated

---

[1] Pub. L. 114-125, 130 Stat. 122 (February 24, 2016), § 906(e).

as the basis of the claim. The statute provides that the claim for drawback must be filed within five

(5) years after the "date of importation" of the designed, duty-paid or tax-paid merchandise.

Section 313(j)(2) provides:

> (2) Subject to paragraphs (4), (5), and (6), if there is, with respect to imported merchandise on which was paid any duty, tax, or fee imposed under Federal law upon entry or importation, any other merchandise (whether imported or domestic), that—

>> (A) is classifiable under the same 8-digit HTS subheading number as such imported merchandise;

>> (B) is, before the close of the 5-year period *beginning on the date of importation of the imported merchandise* and before the drawback claim is filed, either exported or destroyed under customs supervision; and

>> (C) before such exportation or destruction—

>>> (i) is not used within the United States, and

>>> (ii) is in the possession of, including ownership while in bailment, in leased facilities, in transit to, or in any other manner under the operational control of, the party claiming drawback under this paragraph, if that party—

>>>> (I)    is the importer of the imported merchandise, or

>>>> (II)    received the imported merchandise, other merchandise classifiable under the same 8-digit HTS subheading number as such imported merchandise, or any combination of such imported merchandise and such other merchandise, directly or indirectly from the person who imported and paid any duties, taxes, and fees imposed under Federal law upon importation or entry and due on the imported merchandise (and any such transferred merchandise, regardless of its origin, will be treated as the imported merchandise and any retained merchandise will be treated as domestic merchandise);

> then, notwithstanding any other provision of law, upon the exportation or destruction of such other merchandise an amount calculated pursuant to regulations prescribed by the Secretary of the Treasury under subsection (l) shall be refunded as drawback. Notwithstanding subparagraph (A), drawback shall be allowed under

this paragraph with respect to wine if the imported wine and the exported wine are of the same color and the price variation between the imported wine and the exported wine does not exceed 50 percent. Transfers of merchandise may be evidenced by business records kept in the normal course of business and no additional certificates of transfer shall be required.

19 U.S.C. § 1313(j)(2) (Emphasis added).

The question presented is how the term "date of importation," as it appears in 19 U.S.C. § 1313(j)(2) should be interpreted, where, as here, the merchandise designated as the basis for the drawback claim does not immediately enter the Customs Territory of the United States upon its arrival at a port of entry, but is instead temporarily stored in a Foreign Trade Zone ("FTZ") before being withdrawn into the Customs Territory and assessed with duties or taxes.

An FTZ is defined in the Foreign Trade Zones Act of 1934[2] as a designated area or facility, in or adjacent to a port of entry, which is treated, for purposes of the Customs laws, as if it were outside the Customs Territory of the United States. Foreign and domestic goods of all kinds admitted to an FTZ "without being subject to the Customs laws of the United States," and:

> … may be stored, sold, exhibited, broken up, repacked, assembled, distributed, sorted, graded, cleaned, mixed with foreign or domestic merchandise, or otherwise manipulated, or be manufactured except as otherwise provided in this chapter, and be exported, destroyed, or sent into customs territory of the United States therefrom …

19 U.S.C. § 81c(a). The Act also specifies that "when foreign merchandise is so sent from a zone into customs territory of the United States it shall be subject to the laws and regulations of the United States affecting imported merchandise … " *Id.*

In its Motion to Dismiss, the defendant argues that the term "date of importation" should be construed according to its historical meaning, as the bringing of goods on a vessel within port limits with intent to unlade," citing such venerable precedents as *Cunard S.S. Co. v. Mellon*, 262

---

[2] Pub. L. 73- 397, 19 U.S.C. §§ 81(a-u) (June 18, 1934).

U.S. 100, 121-22 (1923), which descends from a line of precedents dating to the early 19th century.

Indeed, Customs has incorporated this definition into its regulations, albeit with a notable caveat:

> 19 C.F.R. § 101.1 Definitions
>
> As used in this chapter, the following terms shall have the meanings indicated unless either **the context in which they are used requires a different meaning** or a different definition is prescribed for a particular part or portion thereof:
>
>    *      *      *
>
> Date of importation: "Date of importation" means, in the case of merchandise imported otherwise than by vessel, the date on which the merchandise arrives within the Customs territory of the United States. In the case of merchandise imported by vessel, "date of importation" means the date on which the vessel arrives within the limits of a port in the United States with intent then and there to unlade such merchandise.

(Emphasis added).

In this case, the Court is called upon to use its power and duty to interpret the law and regulations[3] and to determine whether, in the instant case, involving the movement of imported merchandise through an FTZ, presents a "context" in which the term "date of importation" requires a different meaning than provided for in the regulation. The facts of this case and the operation of the Foreign Trade Zones Act provide a "context" in which the term "date of importation" should be defined differently. For the reasons set forth herein, the "date of importation" in this case should be defined as the date that the imported, designated merchandise identified in plaintiff's drawback claim was withdrawn from the FTZ for domestic consumption, and first became "subject to the laws and regulations of the United States affecting imported merchandise." 19 U.S.C. § 81c(a).

---

[3] *See Loper Bright Ent. v. Raimondo*, 144 S. Ct. 2244 (2024).

Under this reading, it is readily seen that plaintiff's 19 U.S.C. § 1313(j)(2) drawback claim was timely filed, its complaint sets out a claim upon which relief may be granted, and there is no basis for dismissal of this action under USCIT R. 12(b)(6).

## **RELEVANT FACTS**

The facts material to the instant motion are not in dispute.

On May 5, 2018, KMM, through its Customhouse broker Customs Advisory Services Inc., filed drawback claim H52-0004901-4 with the New York/Newark Drawback Center, seeking 19 U.S.C. § 1313(j)(2) drawback of duties and excise taxes in respect of certain exported cigarettes classified under subheading 2402.20.80, HTS as "paper-wrapped cigarettes.[4] A copy of the drawback claim is appended at Exhibit A. The claim designated as the basis for drawback a certain import entry of duty and tax-paid cigarettes which were also classified under subheading 2404.20.80, HTS.

The imported merchandise designated as the basis of the drawback claim consisted of Indian-origin cigarettes, also classified under subheading 2402.20.80, HTS, entered under cover of Chicago Consumption Entry 605-5547323-4 on May 6, 2013 — less than 5 years before the

---

[4] Subheading 2404.20.80, HTS provides for:

| | |
|---|---|
| 2402 | Cigars, cheroots, cigarillos and cigarettes, of tobacco or of tobacco substitutes: |

               *                          *                      *

| | |
|---|---|
| 2402.20 | Cigarettes containing tobacco |

               *                          *                      *

Other [than containing clove];

| | |
|---|---|
| 2402.20.80 | Paper-wrapped cigarettes |

Goods so classified are subject to duty at a rate of $1.05/kg + 2.3% ad valorem. They are subject to Federal Excise Tax ("FET") at a rate of $50.33 per 1000 "sticks."

drawback claim was filed. A copy of the entry summary is appended as Exhibit B. It should be noted that the consumption entry is a Type 06 entry, signifying that the goods were withdrawn from FTZ No. 31 in Madison, Illinois for consumption.

The cigarettes identified on the consumption entry had arrived by vessel at the Port of Norfolk, Virginia in three separate movements. First, on February 23, 2013, some 12,997 kg. of cigarettes arrived at the Port of Norfolk, Virginia. They were transported under an Immediate Transportation Bond to the Port of Chicago, where the FTZ Operator filed Customs Form 214 Notices to Admit the goods into FTZ No. 31 with "nonprivileged foreign" status. The CF 214 forms reflect that zone status for these cigarettes was requested on February 25, 2013 was granted on February 28, 2013. *See* Exhibit C. Second, an additional 5,495 kg. of cigarettes arrived at the Port of Norfolk on March 9, 2013. They were transported under bond to the Port of Chicago, where zone status was requested and received on March 14, 2013. *See* Exhibit D. Third and finally, a further 6,439 kg of Indian-origin cigarettes arrived at the Port of Norfolk on April 20 2013, and was transported under IT bond to the Port of Chicago, where zone status was applied for and received on April 26, 2013. *See* Exhibit E.

All of these cigarettes were withdrawn from the FTZ for consumption under cover of Chicago Consumption Entry 605-554732-1 of May 6, 2013, and duties and taxes were paid on the imported cigarettes at that time. Plaintiff filed its claim for 19 U.S.C. § 1313 (j)(2) substitution unused merchandise drawback on May 5, 2018.

The drawback claim reflected May 6, 2013 as the date of importation of the designated merchandise. CBP audited the claim and determined that the dates of importation were the dates the goods arrived at the Port of Norfolk, and denied the claim as untimely filed.

King Maker Marketing timely protested the denial of drawback. After two years, Customs had taken no action to decide (or even review) the protest, so King Maker sought accelerated disposition of the protest pursuant to 19 U.S.C. § 1515(b)[5] and 19 C.F.R. § 172.22. When CBP failed to take action within 30 days thereafter, the protest was *deemed denied*. King Maker then timely commenced the instant action in this Court. The Court has exclusive subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1581(a).

This issue presented is how the Court should interpret the term "date of importation" as it appears in 19 U.S.C. § 1313(j)(2) and 19 C.F.R. § 101.1. Because context is important in interpreting the meaning of statutory terms, and because Customs' defining regulation expressly states that the term should be given a context-specific definition, the "date of importation" of the imported, designated cigarettes in this case should be defined as the date the cigarettes were withdrawn from FTZ No. 31 for consumption in the United States, became "subject to the laws and regulations affecting imported merchandise," *see* 19 U.S.C. § 81c(a), and were assessed with Customs duties and Federal Excise Taxes. Such an interpretation honors the admonition in the Foreign Trade Zones Act that goods stored in an FTZ are treated as though they were outside the Customs Territory, and are not subject to the Customs laws of the United States. It also reflects the recognition of the Federal Circuit in *National Association of Manufacturers v. United States*,

---

[5] 19 U.S.C. § 1515(b) provides:

(b) Request for accelerated disposition of protest

A request for accelerated disposition of a protest filed in accordance with section 1514 of this title may be mailed by certified or registered mail to the appropriate customs officer any time concurrent with or following the filing of such protest. For purposes of section 1581 of title 28, a protest which has not been allowed or denied in whole or in part within thirty days following the date of mailing by certified or registered mail of a request for accelerated disposition shall be deemed denied on the thirtieth day following mailing of such request.

10 F.4th 1279 (Fed. Cir. 2021), that the essence of "drawback" under 19 U.S.C. § 1313 is the recovery of a sum previously paid the government.

The position taken in the government's Motion to Dismiss should be rejected, since it impermissibly applies a Customs law—*i.e.,* the running of the time limitation for filing drawback in 19 U.S.C. § 1313(j)(2)—to goods stored in an FTZ, in contravention of the clear command of the Foreign Trade Zones Act.

For the reasons set forth below, the correct date of importation for the imported designated merchandise is May 6, 2013, and plaintiff's drawback claim was timely filed on May 5, 2018.

## STANDARD OF REVIEW

Motions to dismiss under USCIT R. 12(b) allow litigants to dismiss any or all claims for relief in any pleading for lack of subject matter jurisdiction, USCIT R. 12(b)(1), or for failure to state a claim, USCIT R. 12(b)(6). A complaint in a 28 U.S.C. § 1581(a) action is a pleading to which USCIT R. 12 applies. When considering a motion to dismiss, the Court must accept well-pleaded factual allegations to be true and draw all reasonable inferences in favor of the nonmoving party. To survive a motion to dismiss for failure to state a claim in particular, a complaint must contain sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face. *Second Nature Designs Ltd. v. United States*, 654 F. Supp. 3d 1301, 1303 (Ct. Int'l Tr. 2023). *See also United States v. Greenlight Organic Inc*., 419 F. Supp. 3d 1298 (Ct. Int'l Tr. 2019). Well-pleaded facts in a claim must be accepted as true. *Haber v. United States*, 831 F.2d 1051 (Fed. Cir. 1987).

## RELEVANT STATUTES AND REGULATIONS

The Foreign Trade Zones Act, 19 U.S.C. § 81c(a), provides in relevant part:

19 U.S.C § 81c Exemption from Customs Law of Merchandise Brought into Foreign Trade Zone

(a) **Handling of merchandise in zone; shipment of foreign merchandise into customs territory; appraisal; reshipment to zone**

Foreign and domestic merchandise of every description, except such as is prohibited by law, may, **without being subject to the customs laws of the United States**, except as otherwise provided in this chapter, be brought into a zone and may be stored, sold, exhibited, broken up, repacked, assembled, distributed, sorted, graded, cleaned, mixed with foreign or domestic merchandise, or otherwise manipulated, or be manufactured except as otherwise provided in this chapter, and be exported, destroyed, or sent into customs territory of the United States therefrom, in the original package or otherwise; **but when foreign merchandise is so sent from a zone into customs territory of the United States it shall be subject to the laws and regulations of the United States affecting imported merchandise …**

(Emphasis added).

Section 101.1 of the Customs Regulations, 19 C.F.R. § 101.1, provides in pertinent part:

19 C.F.R. § 101.1 Definitions

As used in this chapter, the following terms shall have the meanings indicated unless either **the context in which they are used requires a different meaning** or a different definition is prescribed for a particular part or portion thereof:

        \*                  \*                  \*

Date of importation: "Date of importation" means, in the case of merchandise imported otherwise than by vessel, the date on which the merchandise arrives within the Customs Territory of the United States. In the case of merchandise imported by vessel, "date of importation" means the date on which the vessel arrives within the limits of a port in the United States with intent then and there to unlade such merchandise.

## <u>ARGUMENT</u>

I. **Historically, the "Date of Importation" of Merchandise Has Been Defined as the Date a Vessel Arrives Within Port Limits With Intent to Unlade.**

As a general matter, "importation" occurs when goods by any means of transportation "arrive[] within the Customs territory [] with intent then and there to unlade the goods." *See* 19 C.F.R. § 101.1. The "Customs Territory" of the United States has traditionally been a term "used

in a physical and not a metaphorical sense — [] it refers to districts having fixity of location and recognized boundaries." *Cunard S.S. Co. v. Mellon*, 262 U.S. 100, 122 (1923). The Customs Territory of the United States is currently defined as including only the 50 States, the District of Columbia, and Puerto Rico. 19 C.F.R. § 101.1. The Customs laws of the United States are fully operational within the Customs Territory.

The court in *Perots v. United States*, 19 F. Cas. 258 (Circuit Court, D. PA 1816), noted there is no principle of law which requires an entry to be made in order to render an importation complete. "The arrival of a vessel at her port of destination with intent to land her cargo constitutes an importation." *Id.* In *Cunard SS Co. v. Mellon*, 262 U.S. 100 (1923), the Supreme Court further explained that "Importation [ … ] consists in bringing an article into the country from outside. If there is an actual bringing in it is importation regardless of the mode in which it is effected. Entry through a custom house is not the essence of the act." *Id.* at 122.  Hence, "importation" is distinct from "entry." If goods enter the Customs Territory without intent to unlade them, "importation" has not yet occurred. Both physical arrival within port limits and intent to unlade are essential to constitute "importation."

"Importation" is the act which causes liability for duties and taxes to attach to the imported merchandise, and which subjects the imported merchandise to the Customs laws of the United States. It is distinct from the concept of "entry," which follows importation and constitutes the accounting to CBP for the goods imported.

Cargo arriving otherwise than by vessel (*i.e.,* by air or at a land border crossing) is deemed imported when it enters the "Customs Territory," which it does immediately upon arrival. Vessel shipments are imported after they enter the Customs Territory and arrive at the port of unlading. In *Arnold v. United States*, 13 U.S. 104, 120 (1815), the Supreme Court indicated that:

> To constitute an importation so as to attach rights to duties, it is necessary not only that there should be an arrival within the limits of the United States, and of a collection district, but also, within the limits of some port of entry. This was expressly decided in the case of *United States v. Vowell*, 5 Cranch 168 (1809).

What these venerable judicial pronouncements all have in common is that they were issued before enactment of the Foreign Trade Zones Act of 1934. The 1934 Act authorized the establishment of designated locations physically within the United States which are treated as though they were outside the Customs Territory of the United States. The Act further provides that goods arriving in United States ports and directed to an FTZ shall not be subject to the Customs laws of the United States while in the FTZ. This means that contrary to the holdings in *Perots, Arnold* and *Cunard, supra*, liability for duties and taxes is *not* fixed upon these goods at the time of arrival with intent to unlade.[6] Indeed, goods arriving at a United States port and directed to an FTZ are not subject to the Customs laws, nor liability for duties and taxes, until such time as they are withdrawn from the FTZ for domestic consumption. 19 U.S.C. § 81c(a). Goods which are exported from, or destroyed in, the FTZ, will never become subject to the Customs laws and regulations nor to duty and tax assessments. The formulations set out in cases such as *Perots, Arnolds* and *Cunard*, have been displaced, in certain contexts at least, by subsequent legislation.

## II.    Goods in Foreign Trade Zones are Considered to be Outside the Customs Territory.

The Foreign Trade Zones Act of 1934 authorized the designation of a number of areas and facilities which were to be treated as though they were outside the Customs Territory and to which foreign-origin goods could be imported without "being subject to the Customs laws of the United

---

[6] Thus, for example, foreign-origin goods admitted to an FTZ may be exported therefrom without incurring liability for United States Customs duties and taxes.

States."[7] This has prompted more recent court decisions to adopt a different definition of "importation" where FTZs are involved.

Thus, in *Nissan Motor Mfg. Corp. v. United States*, 884 F.2d 1375, 1376 (Fed. Cir. 1989), the Court of Appeals held that "a foreign trade zone is considered to be outside the Customs Territory of the United States." *See also Goodman Mfg. LP v. United States*, 69 F.3d 505 (Fed. Cir. 1995); *Klockner Inc. v. United States*, 8 C.I.T. 3 (1984). As noted in *Torrington Co. v. United States*, 17 C.I.T. 199, 210 (1993), the importation "process occurs when merchandise formally enters the Customs Territory. **In the case of goods going through a FTZ, this occurs when the merchandise leaves the FTZ and enters the United States Customs Territory.**" (Emphasis added). This is precisely the definition this Court must adopt in the instant case.

---

[7] Goods stored in FTZs are not exempt from the operation of United States laws other than the Customs laws. *See, e.g., A.T. Cross v. Sunil Trading Corp.*, 467 F. Supp. 47, 48 (S.D.N.Y 1979) (Lanham Act and statutes relating to trafficking in counterfeit goods); *G.D. Searle & Co. v. Byron Chemical Co.*, 223 F. Supp. 172, 174 (D.N.J. 1963) (goods in FTZs not exempt from operation of United States patent laws). In *G.D. Searle, supra*, the court quoted Congressional Record Remarks of Rep. Emmanuel Celler (D-NY), the author of the Foreign Trade Zones Act:

> In reviewing the history of the Foreign Trade Zone Act of 1934 (19 U.S.C. §§ 81a-81u), I find nothing to indicate an intention on the part of Congress to insulate this patch of United States territory from the force of the patent laws. The exemption from customs duties is expressly stated in the Act (19 U.S.C. § 81c). The expression of Congressman Celler, author of the Act (then called the Free Port Bill), exempting the Foreign Trade Zone from customs duties alone is a typical remark of the sponsors, and significant. The Congressional Record of May 29, 1934 reports this pertinent portion of his statement defining a Foreign Trade Zone (Free Port):

> *        *        *

> It is subject a little within adjacent regions to all the laws relating to public health, vessel inspection, postal service, labor conditions, immigration, and indeed everything except the customs. The purpose of the free zone is to encourage and expedite that part of a nation's foreign trade which its government wishes to free from the restrictions instituted by customs duties.'

(Emphasis added).

In *BMW Mfg. Inc. v. United States*, 23 C.I.T. 641 (1999), aff'd, 241 F.2d 1357 (Fed. Cir. 2001), the court considered assessment of the import Harbor Maintenance Tax ("HMT") on goods admitted into FTZs. The governing statute indicated that the HMT was to be paid upon "entry" into the United States. BMW, which maintained an FTZ subzone for manufacturing in South Carolina, challenged its liability for payment of the tax on goods admitted to the FTZ. Ultimately, the Court upheld a Customs regulation finding that the HMT was a generalized Federal charge on goods arriving at certain ports by water, rather than a tax or duty.[8] It upheld a regulation holding the FTZ operator liable for its payment on goods admitted to the FTZ. But the Court noted that the FTZ Act did provide a basis to define "date of importation" differently than in 19 C.F.R. § 101.1, and that admission to an FTZ is not considered "importation" into the Customs Territory of the United States for purposes of the Customs laws, including for purposes of duties and various excise taxes.

In *Interport Inc. v. Magaw*, 135 F.3d 826, 830 (D.C. Cir. 1998), the Court of Appeals for the District of Columbia Circuit, in an opinion by Judge (future Justice) Ruth Bader Ginsburg, spoke of removing guns from an FTZ "and thereby subjecting them to the import laws."

Here, when the cigarettes were admitted into FTZ No. 31, they did not enter into the Customs Territory.  Unlike most goods, they did not become subject duties and taxes upon their initial arrival into a port.  Rather the Foreign Trade Zones Act specifies that goods may be admitted to a zone **"without being subject to the customs laws of the United States"** and further provides that "when foreign merchandise is so sent **from a zone into customs territory of the United**

---

[8] Subsequent to this decision, Section 1557 of the Miscellaneous Trade and Technical Corrections Act, Pub. L. 108-429. 118 Stat. 2434, 2579 (December 4, 2004) amended the drawback statute to designate the HMT imposed on imports as a "tax" on goods imposed by reason of importation, and eligible for duty drawback. *See Aectra Ref. & Mktg Inc. v. United States*, 565 F.3 1364 (Fed. Cir. 2009).

**States it shall be subject to the laws and regulations of the United States affecting imported merchandise.**" 19 U.S.C. § 81c(a). This statutory directive has been recognized and enforced by several courts. *See, e.g., BMW Mfg. Inc. v. United States*, *supra; Interport Inc. v. Magaw*, *supra*.

Here, in denying KMM's protest, Customs did what the law prohibits: it applied a Customs law — 19 U.S.C. § 1313(j)(2) — to the designated cigarettes during the time they were in the FTZ. This was incorrect, as a matter of law. Under the FTZ Act, the goods were not subject to the Customs laws when, immediately after arrival, they were transported in bond and admitted into FTZ No. 31. Under the FTZ Act, the designated cigarettes did not become "subject to the laws and regulations of the United States affecting imported merchandise" until they were "sent from the zone to the Customs Territory of the United States." That occurred on May 6, 2013, when KMM filed Consumption Entry 605-5547323-4 at the Port of Chicago, and the imported cigarettes were assessed with duties and taxes.

It follows that the drawback claim in this case filed on May 5, 2018, was filed within the 5-year period commencing on the date of importation of the goods, and was timely under the statute. Plaintiff's Complaint in this action does state a valid claim upon which this Court may grant relief.

### III.    Customs Law Does Not Apply to Merchandise Stored in Foreign Trade Zones.

The Foreign Trade Zones Act, 19 U.S.C. § 81c *et seq*., explains that foreign and domestic merchandise of every description "may, without being subject to the customs laws of the United States, except as otherwise provided in this chapter, be brought into a zone" for various purposes. The "Customs Territory of the United States" is defined as including "only the States, the District of Columbia, and Puerto Rico." 19 C.F.R § 101.1. These are the locations in which the United States customs laws, including the duty drawback law (the oldest of all customs laws) operate.

Certain legal consequences attach when goods are brought within the Customs Territory of the United States or, in the case of goods arriving by vessel, when they are brought within the limits of a port with intent to unlade. These consequences do not attach to merchandise imported for deposit into an FTZ.

The Foreign Trade Zones Act itself, 19 U.S.C. § 81c, speaks of bringing foreign goods into an FTZ for various purposes and states "but when foreign merchandise is so sent from a zone into Customs Territory of the United States, it shall be subject to the laws and regulations of the United States affecting imported merchandise."  Imported merchandise destined for deposit into FTZs is typically moved directly from the port of unlading to the FTZ under bond, often using "direct delivery" procedures. These procedures exempt such goods, for a limited time, from being subject to the duty assessment requirement which typically attaches upon arrival in the Customs Territory or unlading from a vessel within port limits until the goods are admitted to the FTZ.

When the designated cigarettes are in the FTZ, they are not in the Customs Territory (at least as far as the Customs laws are concerned) and thus, customs laws may not be applied to the cigarettes while in the FTZ. The duty drawback law, 19 U.S.C. § 1313 (j), including its 5-year limit for filing a drawback claim, measured in this case from the date of importation of the imported goods designated in the drawback claim, is a customs law that cannot be applied to goods in the FTZ, according to the Foreign Trade Zones Act. Therefore, the date of importation for the purposes of the duty drawback claim governed by customs law cannot be applied to the cigarettes until they were withdrawn from FTZ No. 31 for domestic consumption.

The government's motion relies heavily on a 1978 Customs Service Decision titled: *Drawback; Date of Importation For Drawback Purposes*, 13 Cust. B. & Dec. 1019 (July 7, 1978), where Customs determined that the former five-year time limit on exportation to qualify for

drawback does not commence when goods are withdrawn for consumption from a Customs bonded warehouse, as "importation occurs before the merchandise is entered for consumption or warehouse." *See* Government's Brief, ECF 20 at p.11. Plaintiff agrees. But in citing this precedent, defendant disregards the crucial differences between Customs bonded warehouses and FTZs.

Bonded warehouses, unlike FTZs, are considered to be within the Customs Territory, and merchandise stored therein is fully subject to the Customs laws. *See, e.g., United States v. Commodities Export Corp*., 14 C.I.T. 166 (1990). In *Xerox v. Harris County*, 459 U.S. 145, 150 (1982), the Supreme Court noted that "*imports* may be stored duty free in bonded warehouses." (Emphasis added). In *R.J. Reynolds Tobacco Co. v. Durham County*, 479 U.S. 130, 133-34 (1986), the Supreme Court indicated that goods stored in bonded warehouses are importations but simply are not subject to duties unless withdrawn from the warehouse for consumption in the United States. In holding that goods stored in bonded warehouses were "imported" merchandise, the *Commodities Export* court quoted from the decision in *John V. Carr Inc. v. United States*, 58 Cust. Ct. 809, 813 (Cust. Ct. 1967), aff'd, 55 C.C.P.A. 111 (1968) which noted:

> The meaning of imported merchandise, except where a statute provides otherwise, has been construed by our appellate court as "*merchandise* that has been brought within the limits of a port of entry *from a foreign country* with the intention to unlade and the word '*importation*' as used in the tariff statutes, unless otherwise limited, means merchandise to which that condition or status has attached." [Italics quoted.] *Porto Rico Brokerage Co., Inc., et al.* v. *United States*, 23 CCPA 16, T.D. 47672; and *Procter & Gamble Manufacturing Co.* v. *United States*, 19 CCPA 415, T.D. 45678.

(Emphasis added). Thus, in holding that goods stored in customs bonded warehouses were considered "imported," the court in *Commodities Export* concluded that the warehoused goods, having been brought within the Customs Territory and unladen, had been "imported" under the classic definition. But in citing *John V. Carr*, the court acknowledged that the conventional

definition of "imported" only applies "unless otherwise limited" and "except where a statute provides otherwise."

In this case, the limitation on use of the traditional definition of "importation" is provided by the Foreign Trade Zones Act, and particularly by 19 U.S.C. § 81c(a), which teaches that goods stored in an FTZ are not considered to be within the Customs Territory of the United States and, while in the FTZ, are not subject to the Customs laws of the United States. And 19 U.S.C. § 1313, which the government contends established a time limitation which was running against plaintiff's goods while they were in the FTZ, is most definitely a Customs law.

Other important distinctions between Customs bonded warehouses and FTZs abound. Their creation is authorized by different statutes — Section 555 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1555, in the case of bonded warehouses, and the Foreign Trade Zones Act of 1934, 19 U.S.C. § 81a *et seq*., in the case of FTZs. Applications to establish Customs bonded warehouses are considered and approved exclusively by local Customs officials, 19 C.F.R. Part 19, while applications to establish an FTZ are considered by the interagency Foreign Trade Zones Board in Washington, D.C, *see* 15 C.F.R. Part 400, which may limit zone operations for public interest or policy reasons.[9] Certain operations which may be authorized for FTZs, such as manufacturing new products for consumption in the United States,[10] are strictly prohibited in bonded warehouses.[11]

---

[9] *See* Donald E. DeKieffer and George W. Thompson, *Political and Policy Dimensions of Foreign Trade Zones: Expansion or the Beginning of the End?* 18 Vanderbilt J. of Transnational Law 481 (1985).

[10] *See, e.g., BMW Manufacturing Corp. v. United States*, 241 F.3d 1357 (Fed. Cir. 2001); *Arbor Foods v. United States*, 97 F.3d 534 (Fed. Cir. 1996).

[11] *See Tropicana Prods. v. United States*, 16 C.I.T. 155 (1992).

Thus, the concept of "importation" as applied to goods stored in Customs bonded warehouses is completely different from the concept of "importation" as applied to goods stored in Foreign Trade Zones. The government's attempt to suggest otherwise is egregiously misleading, and fails to address the context in which the cigarettes designated in plaintiff's drawback claim came to enter the Customs Territory and become subject to the Customs laws.

## IV.    The "Date of Importation" to Calculate the Five Year Limit in 19 U.S.C. § 1313(j) is the Date the Designated Goods Were Withdrawn from the FTZ for Consumption.

The drawback regulations, 19 C.F.R. Part 190, do not contain a definition of the "date of importation" for drawback purposes. Customs has traditionally employed the regulatory definition set out at 19 C.F.R. § 101.1, and has deemed "importation" to be generally a transportation-based concept. However, the definition set out at 19 C.F.R. § 101.1 applies only unless the "context otherwise requires" (just as the court in *John V. Carr, supra,* noted that the traditional definition only applies "unless otherwise limited"). This is a situation where the context – indeed, the law – requires a different definition of the "date of importation."

The Foreign Trade Zones Act provides the answer when it indicates that goods withdrawn from an FTZ only become subject to the customs laws when "sent from a zone into the Customs territory of the United States." 19 U.S.C. § 81c. In this case the imported "designated" cigarettes were sent from FTZ No. 31 into the Customs Territory of the United States on May 6, 2013, when a Type 06 consumption entry was filed, and the goods were withdrawn from the FTZ for consumption. It is at that point that the goods entered the "Customs Territory of the United States," became subject to the Customs laws, and were subject to assessment of duty and tax.

This interpretation of "date of importation" is consistent with the context in which the import transaction, and subsequent drawback claim, arise. "In law and in life … the same words, placed in different contexts, sometimes mean different things." *Yates v. United States*, 574 U.S.

528, 537 (2015). The Supreme Court has noted that "identical language may convey varying content when used in differing statutes, [and] sometimes even in different provisions of the same statute." *Id.*; *see Atlantic Cleaners and Dyers v. United States*, 286 U.S. 427, 433 (1932) (Most words have different shades of meaning and consequently may be variously construed, not only when they occur in different statutes, but when used more than once in the same statute or even in the same section.). Because statutes (and regulations) draw meaning from their context, "we will look not only to the word itself, but also to the statute and the surrounding scheme to determine what meaning Congress intended." *Bailey v. United States*, 516 U.S. 137, 143 (1995). The Supreme Court has indicated that in interpreting statutes and regulations, it will "construe language in its context an in light of the terms surrounding it." *Dubin v. United States*, 599 U.S. 110, 118 (2023). "Context counts." *Envt'l Def. v. Duke Energy Corp.*, 549 U.S. 561, 576 (2007). Here, the unique context provided by operation of the Foreign Trade Zones Act indicates that the "date of importation" is the date imported cigarettes designated in plaintiff's drawback claim were withdrawn from FTZ No. 31 for consumption in the United States, and assessed with duties and taxes.

This is evident from the language of 19 U.S.C. § 1313(j)(2), which concerns itself with "imported merchandise on which was paid any duty, tax, or fee imposed under Federal law upon entry or importation." The statute concerns itself with merchandise on which duty or tax has been paid, and acknowledges that such payment may occur either on "entry" or "importation."

Two other rules of statutory construction favor plaintiff's interpretation of the term "date of importation" in this case. The first is that apparently conflicting statutes should be construed harmoniously, with every provision of both statutes given effect if possible. *United States v. Borden & Co.*, 308 U.S. 188, 198 (1939). Where there are two acts upon the same subject, the rule

is to give effect to both if possible. *Columbia Gas Dev. Corp. v. FERC*, 651 F.2d 1146 (5th Cir. 1987). "Repeal by implication" is strongly disfavored. It may only be allowed to occur where a latter statute cannot be construed harmoniously with an earlier statute. *Xianli Zhang v. United States*, 640 F.3d 1358 (Fed. Cir. 2011).

In this case, the Tariff Act of 1930 and the Foreign Trade Zones Act of 1934 are not in irreconcilable conflict. If the term "beginning on the date of importation of the imported merchandise," as used in 19 U.S.C. § 1313(j)(2) is given a proper contextual definition, as suggested by plaintiff – a definition adopted in prior decisions of this court for several decades[12] — both laws are given effect. The period for claiming drawback of duties and taxes runs for five years from the date the designated imported goods enter the Customs Territory of the United States and are assessed with duties and taxes.  Under plaintiff's interpretation, goods stored in an FTZ are not subject to a "customs law" of the United States.

The government's formulation, by contrast, runs contrary to the clear (and unconditional) Congressional command in the Foreign Trade Zones Act, 19 U.S.C. § 81c, that goods stored in an FTZ are outside the Customs Territory of the United States and are not subject to the Customs laws of the United States. It applies a Customs law — 19 U.S.C. § 1313(j)(2) — to goods in an FTZ. Plaintiff's interpretation avoids that result and gives full effect to both statutes.

The second maxim of statutory construction to be considered is that a statute should be construed so as to avoid absurd or anomalous results. *See Frazier v. McDonough*, 66 F.4[th] 1353 (Fed Cir. 2023); *Pitsker v. Office of Personnel Management*, 234 F.3d 1378 (Fed. Cir. 2000). As the Federal Circuit has noted, the essence of "drawback" under 19 U.S.C. § 1313 is the recovery of a sum previously paid to the government. *See National Assn. of Manufacturers v. Department*

---

[12] *See, e.g., Torrington Co. v. United States*, 17 C.I.T. 199 (1993).

*of the Treasury*, 10 F. 4th 1279 (Fed. Cir. 2021). It would be both absurd and anomalous to interpret a time limitation on recovery of duties and taxes paid as beginning to run *before* those duties and taxes are paid. But that is precisely the absurd result which would follow from the government's position in this case.

## **CONCLUSION**

For the reasons above, the correct "date of importation" that should be used to calculate the five-year claim filing period in 19 U.S.C. § 1313(j)(2) is May 6, 2013, the date the imported merchandise designated in plaintiff's drawback claim entered the Customs Territory of the United States and became subject to the assessment of duties and taxes. The government's position should be rejected and its Motion to Dismiss this action denied.

Respectfully submitted,

/s/ John M. Peterson
John M. Peterson
Richard F. O'Neill
Maria E. Celis
Patrick B. Klein
NEVILLE PETERSON LLP
*Counsel for Plaintiff*
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Dated:  December 31, 2024

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. TIMOTHY M. REIF, JUDGE**

```
------------------------------------------------------------------------ X
KING MAKER MARKETING, INC.,                    :
                                               :
              Plaintiff,                       :
                                               :
        v.                                     :        No. 24-cv-00134
                                               :
UNITED STATES,                                 :
                                               :
              Defendant.                       :
------------------------------------------------------------------------ X
```

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to the U.S. Court of International Trade Standard Chambers Procedures, and in reliance upon the word count feature of the word processing program used to prepare the instant Memorandum, I, Patrick B. Klein, of Neville Peterson LLP, who is responsible for the instant Memorandum, certify that it contains 6,762 words.

Respectfully submitted,

/s/ Patrick B. Klein
    Patrick B. Klein