UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE

| | | |
|---|---|---|
| KING MAKER MARKETING, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Court No. 24-00134 |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**DEFENDANT'S REPLY MEMORANDUM OF LAW TO
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR
<u>FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED</u>**

BRETT A. SHUMATE
Acting Assistant Attorney General
Civil Division

PATRICIA M. McCARTHY
Director

By:     /s/ Justin R. Miller
        JUSTIN R. MILLER
        Attorney-In-Charge
        International Trade Field Office

*OF COUNSEL*:                    /s/ Beverly A. Farrell
SABAHAT CHAUDHARY              BEVERLY A. FARRELL
Office of Assistant Chief Counsel   Senior Trial Attorney
International Trade Litigation      Department of Justice, Civil Division
U.S. Customs and Border Protection  Commercial Litigation Branch
                                    26 Federal Plaza, Room 346
                                    New York, New York 10278
                                    Tel.: (212) 264-0483 or 9230
                                    Attorneys for Defendant

Dated: February 4, 2025

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................. 3

ARGUMENT ....................................................................................................................... 6

I.   STANDARD OF REVIEW ....................................................................................... 7

II.  THERE IS NO LANGUAGE, OR CONGRESSIONAL INTENT, IN THE FOREIGN
     TRADE ZONE ACT OR THE DRAWBACK STATUTE TO SUPPORT PLAINTIFF'S
     DEPARTURE FROM THE LONG-STANDING MEANING OF THE WORD
     "IMPORTATION," AS THAT TERM IS USED IN THE DRAWBACK STATUTE,
     THEREFORE PLAINTIFF CANNOT ESTABLISH ENTITLEMENT TO
     SUBSTITUTION DRAWBACK .................................................................................. 8

     A.  Plaintiff Admits That Historically "Importation" Is Defined As Bringing An
         Article Into A Country From Outside ........................................................................ 8

     B.  When Congress Enacted The Foreign Trade Zone Act Of 1934,
         It Was Operating In A Landscape That Had Already Defined "Importation." ........... 9

     C.  Congress Understood The Meaning Of The Term "Importation" When It Enacted
         The Drawback Statute Of Which Plaintiff Seeks To Avail Itself ............................ 11

CONCLUSION .................................................................................................................. 18

# TABLE OF AUTHORITIES

**Cases**

*A&D Auto Sales, Inc. v. United States*,
  748 F.3d 1142 (Fed. Cir. 2014)..........................................................................7

*Amcor Flexibles Singen GMBH v. United States*,
  425 F. Supp. 3d 1287 (Ct. Int'l Trade 2020) ....................................................12

*Arunachalam v. Int'l Business Machines Corp.*,
  759 Fed. Appx. 927 (Fed. Cir. 2019)...................................................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..........................................................................................6, 7

*Ass'n. of Manufacturers v. Dep't. of Treas.*,
  F.4th 1279 (Fed. Cir. 2021) .................................................................................5

*Ass'n. of Manufacturers v. Dep't. of Treas.*,
  427 F. Supp. 3d 1362 (Ct. Int'l Trade 2020                                        5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).........................................................................................6, 7

*BMW Mfg. Inc. v. United States*,
  23 C.I.T. 641 (1999) *aff'd* 241 F.2d 1357 (Fed. Cir. 2001)...............................15

*Cunard SS Co. v. Mellon*,
  262 U.S. 100 (1923)........................................................................................8, 9

*Estado de Sinaloa, A.C. v. United States*,
  459 F. Supp. 3d 1354 (Ct. Int'l Trade 2020) ......................................................7

*Goodman Mfg., L.P. v. United States*,
  69 F.3d 505 (1995)............................................................................................14

*Klockner Inc. v. United States*,
  590 F. Supp. 1266 (Ct. Int'l Trade 1984) ..........................................................14

*Nat'l. Ass'n. of Manufacturers v. U.S. Dep't. of Treas.*,
  427 F. Supp. 3d 1362, 1364–65 (Ct. Int'l. Trade 2020) ......................................6

*Nat'l. Ass'n. of Manufacturers v. U.S. Dep't. of the Treas.*,
  432 F. Supp. 3d 1381 (Ct. Int'l. Trade 2020) ......................................................6

*Nat'l. Ass'n of Manufacturers v. Dep't. of Treas.*,
    10 F.4th 1279 (Fed. Cir. 2021) ................................................................... 6

*Nissan Motor Mfg. Corp., U.S.A. v. United States*,
    844 F.2d  (Fed. Cir. 1989) ...................................................................... 14

*Standard Oil Co. of N.J. v. United States*,
    221 U.S. 1 (1911) .................................................................................... 9

*Titanium Metals Corp. v. United States*,
    901 F. Supp. 362 (Ct. Int'l Trade 1995) ............................................... 13

*Torrington Co. v. United States*,
    17 C.I.T. 199 (1993) ........................................................................ 13, 14

*United States v. Commodities Export Co.*,
    733 F. Supp. 109 (Ct. Int'l. Trade 1990) ............................................. 2, 9

*United States v. Hansen*,
    599 U.S. 762 (2023) ............................................................................... 11

*United States v. Maverick Mktg., LLC*,
    322 F. Supp. 3d 1373 (Ct. Intl. Trade 2018) ......................................... 3

## Harmonized Tariff Schedule of the United States (HTSUS)

Subheading 2402.20.80 ...................................................................................... 5

## Statutes

19 U.S.C.§ 81a-81u ........................................................................................ 10

19 U.S.C. § 1313 ........................................................................................ 1, 12

19 U.S.C. § 1313(d) ..................................................................................... 3, 5

19 U.S.C. § 1313(c)(1)(D) .............................................................................. 12

19 U.S.C. § 1313(j) ........................................................................................ 12

19 U.S.C. § 1313(j)(1) .................................................................................... 11

19 U.S.C. § 1313(j)(2) ..................................................................... 3, 5, 6, 11

19 U.S.C. § 1313(p)(2)(E) .............................................................................. 12

19 U.S.C. § 1313(r)(1) ............................................................................................... 4, 11

19 U.S.C. § 1484(a) ....................................................................................................... 13

19 U.S.C. § 1484(a)(1)(A) ............................................................................................ 12

19 U.S.C. § 1484(a)(1)(B) ............................................................................................ 12

19 U.S.C. § 1514(a) ......................................................................................................... 6

19 U.S.C. § 1673e(a)(3) (1988) .................................................................................... 14

26 U.S.C. § 4461(c)(2)(B) ............................................................................................ 15

26 U.S.C. § 5703(a)(1) .................................................................................................... 3

28 U.S.C. § 1581(a) ......................................................................................................... 6

## Rules and Regulations

USCIT Rule 8 .................................................................................................................... 7

USCIT Rule 12(b)(6) ................................................................................................ *passim*

19 C.F.R. § 24.24(e)(2)(iii) ........................................................................................... 15

19 C.F.R. § 101.1 ........................................................................................................... 16

19 C.F.R. § 141.0a(a) .................................................................................................... 12

19 C.F.R. § 142.3 ........................................................................................................... 12

19 C.F.R. § 142.3a(a) .................................................................................................... 12

19 C.F.R. § 142.3a(b) .................................................................................................... 12

19 C.F.R. § 146.32(a)(1) ................................................................................................. 4

19 C.F.R. § 190.2 ............................................................................................................. 3

## <u>O</u>ther Authorities

Bryan A. Garner, Garner's Modern English Usage, 493 (4th ed. 2018) ......................... 9, 14

*Drawback: Date of Imp. for Drawback Purposes*,
   13 Cust. B. & Dec. 1019 (1978) ............................................................................... 9

Free Trade Zone Act of 1934 ............................................................................. *passim*

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE

| | | |
|---|---|---|
| KING MAKER MARKETING, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Court No. 24-00134 |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**DEFENDANT'S REPLY MEMORANDUM OF LAW TO
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR
<u>FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED</u>**

Pursuant to Rule 12(b)(6) of the Rules of the United States Court of International Trade (CIT), and in accordance with the Court's January 30, 2025 Order, ECF No. 27, defendant, United States (the Government), respectfully submits its reply to plaintiff's opposition to the Government's motion to dismiss.  Because plaintiff, King Maker Marketing, Inc. (King Maker), failed to timely file its substitution drawback claims within five years of the importation of the designated import entries, it is not entitled to drawback and, thus, its action should be dismissed for failure to state a claim on which relief can be granted.

**<u>INTRODUCTION</u>**

This case concerns a privilege known as "drawback."  Drawback is the payment by U.S. Customs and Border Protection (CBP) to a qualifying claimant of up to 99% of the taxes, duties, and fees paid on imported goods when the same or substitute goods are exported or are used in the manufacture of products that are exported, or when certain other specified conditions are met. *See generally* 19 U.S.C. § 1313.  "The aim of the drawback duty statute is to encourage domestic manufacture of articles for export and to allow those articles to compete fairly in the world

marketplace." *Int'l Light Metals v. United States*, 194 F.3d 1355, 1366 (Fed. Cir. 1999). However, to be entitled to drawback, the drawback entry must be filed or applied for not more than five years after the importation date of the merchandise on which drawback is claimed.

Here, plaintiff failed to satisfy the drawback requirements because it filed its drawback claim more than 5 years after the date of importation of the merchandise designated for drawback. To avoid the fatal effect of its untimely drawback claim, plaintiff argues that the term "importation" should not be construed by its common meaning but, instead should be redefined to mean "entry." Plaintiff is wrong.

As discussed below, the long-standing meaning of importation is "'the act of bringing goods and merchandise into a country from a foreign country.'" *United States v. Commodities Export Co.*, 733 F. Supp. 109, 112 (Ct. Int'l. Trade 1990) ("Black's Law Dictionary defines importation as 'the act of bringing goods and merchandise into a country from a foreign country.'"). This meaning has not been changed by the advent of the Free Trade Zone Act of 1934. Accordingly, because King Maker failed to timely file its substitution drawback claims within five years of the importation of the designated import entries, it is not entitled to drawback. Therefore, its action should be dismissed for failure to state a claim on which relief can be granted.

When the facts alleged in a complaint, read in the light most favorable to plaintiff, fail to support a claim for which relief is available, that complaint must be dismissed under Rule 12(b)(6) of this Court. The facts alleged by King Maker in its complaint do not support a claim for relief. Therefore, the Court should dismiss the complaint with prejudice.

## BACKGROUND

This action concerns 21 substitution drawback[1] claims made by the importer King Maker at the port of New York, NY on various dates between May 5, 2018 and February 15, 2019 with designated import entries of paper-wrapped cigarettes from India that plaintiff alleges were imported and admitted into a Foreign Trade Zone (FTZ) between September 4, 2012 and February 6, 2014.  Compl. ¶ 6 (Chart).  King Maker also alleges that it paid Federal Excise Taxes (FET) and/or Merchandising Processing Fees on the designated import entries.  *Id.*[2]  King Maker is the drawback claimant and the importer of record of the designated entries.  Compl. ¶¶ 4, 6.

King Maker seeks to avail itself of the benefit of substitution drawback under 19 U.S.C. § 1313(j)(2)[3] and contends that CBP erred when it denied King Maker's drawback claims as

---

[1] As discussed more fully below, drawback authorized for payment by CBP is defined as:

> the refund, in whole or in part, of the duties, taxes, and/or fees paid on imported merchandise, which were imposed under Federal law upon entry or importation, and the refund of internal revenue taxes paid on domestic alcohol as prescribed in 19 U.S.C. 1313(d).  More broadly, drawback also includes the refund or remission of other excise taxes pursuant to other provisions of law.

19 C.F.R. § 190.2.

[2] The bulk of plaintiff's claimed drawback refund is for Federal Excise Tax (FET) on tobacco for which importers are liable pursuant to 26 U.S.C. § 5703(a)(1), which CBP collects, and which is paid based on the date of entry into the customs territory of the United States.  *U.S. v. Maverick Mktg., LLC*, 322 F. Supp. 3d 1373, 1377-79 (Ct. Intl. Trade 2018) (unpaid FET on tobacco are considered customs duties for the purpose of jurisdiction).

[3] Section 1313(j)(2) provides:

> (2)Subject to paragraphs (4), (5), and (6), if there is, with respect to imported merchandise on which was paid any duty, tax, or fee imposed under Federal law upon entry or importation, any other merchandise (whether imported or domestic), that—
>
> (A)is classifiable under the same 8-digit HTS subheading number as such imported merchandise;

3

untimely because the claims had not been filed '"before the close of the 5-year period beginning on the date of importation of the imported merchandise."'  Section 1313(r)(1) provides that "[a] drawback entry shall be filed or applied for, as applicable, not later than 5 years after the date on which merchandise on which drawback is claimed was imported."  If a claim is not completed within the 5-year period, it will be considered abandoned.  *Id.*

---

(B) is, before the close of the 5-year period beginning on the date of importation of the imported merchandise and before the drawback claim is filed, either exported or destroyed under customs supervision; and

(C) before such exportation or destruction—

(i) is not used within the United States, and

(ii) is in the possession of, including ownership while in bailment, in leased facilities, in transit to, or in any other manner under the operational control of, the party claiming drawback under this paragraph, if that party—

(I) is the importer of the imported merchandise, or

(II) received the imported merchandise, other merchandise classifiable under the same 8-digit HTS subheading number as such imported merchandise, or any combination of such imported merchandise and such other merchandise, directly or indirectly from the person who imported and paid any duties, taxes, and fees imposed under Federal law upon importation or entry and due on the imported merchandise (and any such transferred merchandise, regardless of its origin, will be treated as the imported merchandise and any retained merchandise will be treated as domestic merchandise);

then, notwithstanding any other provision of law, upon the exportation or destruction of such other merchandise an amount calculated pursuant to regulations prescribed by the Secretary of the Treasury under subsection (l) shall be refunded as drawback. Notwithstanding subparagraph (A), drawback shall be allowed under this paragraph with respect to wine if the imported wine and the exported wine are of the same color and the price variation between the imported wine and the exported wine does not exceed 50 percent. Transfers of merchandise may be evidenced by business records kept in the normal course of business and no additional certificates of transfer shall be required.

The imported goods were withdrawn from the FTZ for consumption and entered as Type 06 Foreign Trade Zone consumption entries during the "Designated Import Period"[4] between May 6, 2013 and September 3, 2018.  Compl. ¶¶6-8.  After being withdrawn from the FTZ, the cigarettes covered by the twenty-one drawback entries were entered and classified under subheading 2402.20.80 of the Harmonized Tariff Schedule of the United States (HTSUS), and all duties, taxes and fees were paid by King Maker.  Compl. ¶ 8.

After entry of the FTZ goods, King Maker "came into possession of, and exported," other cigarettes also classified under subheading 2402.20.80, HTSUS.  These are the goods King Maker identified as substitution merchandise for the cigarettes withdrawn from the FTZ to qualify for drawback under section 1313(j)(2) as substitution unused merchandise.  Compl. ¶¶ 10, 11.  King Maker filed its drawback claims between May 5, 2018 and February 15, 2019.[5]

On March 18, 2022, CBP denied King Maker's drawback claims because the claims were not filed "'before the close of the 5-year period beginning on the date of importation of the imported merchandise.'"  Compl. ¶ 14.  In calculating the 5-year period, CBP used the dates the imported cigarettes were admitted to the FTZ as the "date of importation" provided in section

---

[4] *See* ECF No. 12-1 at 6.

[5] On July 24, 2020, the liquidation of the drawback claims was suspended pursuant to CIT Court No. 19-00053.  *Nat'l. Ass'n of Manufacturers v. U.S. Dep't. of Treas.*, 427 F. Supp. 3d 1362, 1364–65 (Ct. Int'l. Trade 2020), *judgment entered sub nom. Nat'l. Ass'n of Manufacturers v. U.S. Dep't. of the Treas.*, 432 F. Supp. 3d 1381 (Ct. Int'l. Trade 2020), and *aff'd sub nom. Nat'l. Ass'n of Manufacturers v. Dep't. of Treas.*, 10 F.4th 1279 (Fed. Cir. 2021) (invalidating certain CBP regulations that "prevent[ed] a domestically produced exported good, that would have been subject to the excise tax if made available for domestic use, from satisfying a claim for substitution drawback under the language of 19 U.S.C. § 1313(j)(2).")  CBP suspended all drawback claims that indicated a drawback tax in CBP's records.

1313(j)(2), not when plaintiff withdrew them from the FTZ and filed consumption entries along with the payment of duties, taxes, and fees.  Compl. ¶ 15.

On September 6, 2022, King Maker timely filed Protest No. 1001-22-101163[6] against the denial of the drawback claims.  *See* ECF 12-1; 19 U.S.C. § 1514(a); Compl. ¶ 16.  After King Maker requested the accelerated disposition of the protest, it was deemed denied by operation of law.  *See* Compl. ¶ 18.  King Maker then timely commenced this action under 28 U.S.C. § 1581(a) by filing a summons and complaint.  ECF Nos. 1, 5; Compl. ¶ 19.

## ARGUMENT

## I.    STANDARD OF REVIEW

CIT Rule 12(b)(6) provides that "a party may assert the following defense[] by motion: . . . (6) failure to state a claim upon which relief can be granted."  Such a motion "must be made before pleading if a responsive pleading is allowed.  *Id*.  A motion to dismiss an action pursuant to Rule 12(b)(6) is "granted if the court, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, concludes that those allegations 'could not raise a claim of entitlement to relief.'"  *Arunachalam v. Int'l Business Machines Corp.*, 759 Fed. Appx. 927, 931 (Fed. Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  A claim has facial plausibility when it "raise[s] a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555 (internal

---

[6] Included in its protest memorandum, King Maker "request[ed] that decision on this protest be suspended pending the Customs Headquarters Application for Further Review decision in respect of KMM's protest 1001-22-101152."  ECF No. 12-1 at 5.

citation omitted). "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 545; *see also Iqbal*, 556 U.S. at 662 ("[T]he pleading standard Rule 8 announces . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").

The complaint must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Determining whether the factual pleading standard has been met is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. When reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court considers the allegations in the complaint as well as documents "'incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record.'" *Confederación Asociaciones Agricolas del Estado de Sinaloa, A.C. v. United States*, 59 F. Supp. 3d 1354, 1361 (Ct. Int'l Trade 2020) (quoting *A&D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1147 (Fed. Cir. 2014)).[7]

---

[7] Here, it is proper for the Court to consider ECF 12-1, ECF 12-2, ECF 16-1, and ECF 16-2, which reflect, among other things, the drawback requests, submissions from King Maker's broker including statements that the drawback submissions were not timely, and the protest and protest memorandum.

II.    **THERE IS NO LANGUAGE, OR CONGRESSIONAL INTENT, IN THE FOREIGN TRADE ZONE ACT OR THE DRAWBACK STATUTE TO SUPPORT PLAINTIFF'S DEPARTURE FROM THE LONG-STANDING MEANING OF THE WORD "IMPORTATION," AS THAT TERM IS USED IN THE DRAWBACK STATUTE, THEREFORE PLAINTIFF CANNOT ESTABLISH ENTITLEMENT TO SUBSTITUTION DRAWBACK**

King Maker concedes that the twenty-one drawback claims at issue were filed five years after the "Actual Import Period from CBP 214s" and therefore the drawback claims were late and abandoned. *See* ECF 12-1 at 6. For King Maker to survive our motion to dismiss, it must establish that, through the enactment of the Foreign Trade Zones Act, Congress clearly changed the long-standing meaning of "importation" as that term is used in the drawback statute to essentially mean the same thing as "entry." *See* Pl. Opp'n at 9-10 (where plaintiff notes that the imported merchandise designated as the basis of the drawback claim was "entered" under a consumption entry dated May 6, 2013, made less than 5 years before the May 5, 2018 drawback claim.).

A.    **Plaintiff Admits That Historically "Importation" Is Defined As Bringing An Article Into A Country From Outside**

In its opposition, plaintiff admits that, as early as 1816, the courts recognized that an importation of merchandise did not require that an entry be made to render that importation complete. Pl. Opp'n at 14 (citing *Perots v. United States*, 19 F. Cas. 258 (Circuit Court, D. PA 1816)). Thus, plaintiff acknowledges that there are two concepts in play: importation and entry. The Supreme Court in *Cunard SS Co. v. Mellon*, 262 U.S. 100, 122 (1923), found that importation "consists in bringing an article into a country from the outside." If merchandise is actually brought in, it constitutes an "importation regardless of the mode in which it is effected." *Id*. Finally, the Supreme Court held that "[e]ntry through a custom house is not the essence of the act [of importation]." *Id*. Thus, the Supreme Court perceived two events as well:

importation and then entry, which logically was not a factor in finding that an importation had occurred. Rather, the "entry" though the customs house would have been for the customs agent to assess and collect any moneys due.

**B.    When Congress Enacted The Foreign Trade Zone Act Of 1934, It Was Operating In A Landscape That Had Already Defined "Importation."**

Plaintiff suggests that somehow a sea change in the meaning of the term "importation" occurred because Congress enacted the Foreign Trade Zone Act of 1934 (FTZ Act). Pl. Opp'n at 15. This position is without support. Indeed, the FTZ Act does not define importation. Rather, by 1934, the courts had already determined that "importation" should be given its ordinary meaning: "bringing an article into a country from the outside." *Cunard*, 262 U.S. at 122. Importation has consistently been understood to mean just that. *See, e.g.*, 13 Cust. B. & Dec. 1019 (Customs), 1978 WL 30020 (July 7, 1978); *United States v. Commodities Export Co.*, 733 F. Supp. 109, 112 (Ct. Int'l. Trade 1990) ("Black's Law Dictionary defines importation as 'the act of bringing goods and merchandise into a country from a foreign country.'"); Bryan A. Garner, GARNER'S MODERN ENGLISH USAGE, 493 (4th ed. 2018) ("A product that comes into a country from abroad is an *import*. The process of bringing it in is *importation*.") (emphasis in original). "[W]here words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country, they are presumed to have been used in that sense unless the context compels to the contrary." *Standard Oil Co. of N.J. v. United States*, 221 U.S. 1, 59 (1911).

There is no question that under the FTZ Act, goods imported into the United States, "except as otherwise provided" in the Act are not subject to the customs laws, but that doesn't prove the absence of an importation. The indisputable facts show that the merchandise covered by the designated import entries was imported into the United States, *i.e.*, brought here from

another country, and then placed in a Free Trade Zone.  Nothing in the FTZ Act provides that

goods brought into the United States that are placed into an FTZ are not "importations."  Rather,

the Act provides in relevant part:

> Foreign and domestic merchandise of every description, except such
> as is prohibited by law, may, without being subject to the customs
> laws of the United States, except as otherwise provided in this
> chapter, be brought into a zone and may be stored, sold, exhibited,
> broken up, repacked, assembled, distributed, sorted, graded,
> cleaned, mixed with foreign or domestic merchandise, or otherwise
> manipulated, or be manufactured except as otherwise provided in
> this chapter, and be exported, destroyed, or sent into customs
> territory of the United States therefrom, in the original package or
> otherwise; but when foreign merchandise is so sent from a zone into
> customs territory of the United States it shall be subject to the laws
> and regulations of the United States affecting imported merchandise
> . . . .

19 U.S.C. § 81(a).  In other words, by not being subject to the customs laws, the importer of

goods subject to the FTZ Act does not have to file entry paperwork or tender duties.  However,

admission to a FTZ requires submission of CBP Form 214 (Application for Foreign-Trade Zone

Admission And/Or Status Designation) in accordance with 19 U.S.C. § 81a-81u.  *See* Pl. Opp'n,

Ex. C (ECF 22-1 at 16-22).  Indeed, Form 214 requires that the applicant state, among other

things, the "importing vessel," the "import date," the "Foreign Port of Lading" and the "U.S. Port

of Unlading" for its merchandise.  As reflected in Pl. Opp'n, Ex. C (ECF 22-1 at 16-22), these

documents establish that plaintiff's merchandise is an importation consistent with the long-

standing meaning of that word.  In contrast, as discussed below, an "entry" would have required

plaintiff to submit documentation to declare value, classification, rate of duty, and submit

estimated duties.  *See* 19 U.S.C. § 1484(a)(1)(A) & (B).

**C.    Congress Understood The Meaning Of The Term "Importation" When It
      Enacted The Drawback Statute Of Which Plaintiff Seeks To Avail Itself**

The plain language of the drawback provision that King Maker invokes, section

1313(j)(2), requires the exportation or destruction of the other merchandise classifiable under the

same 8-digit HTS subheading number as the *imported merchandise* before the close of the 5-year

period beginning *on the date of importation* of *the imported merchandise*.  When Congress used

the term "importation" in the drawback statute, it "it presumably kn[ew] and adopt[ed] the

cluster of ideas that were attached to each borrowed word." *United States v. Hansen*, 599 U.S.

762, 774 (2023).

In the face of an established meaning for the term "importation" for the five-year

drawback limitations period, Congress did not include any reference or include any special

provision allowing the withdrawal for consumption, *i.e.*, making a consumption entry, from the

FTZ to operate as the starting point to measure the 5-year period.  Section 1313(r)(1) requires

that a drawback entry be filed or applied for "not later than 5 years after the date on which

merchandise on which drawback is claimed was imported."  Thus, the plain language of the

statute reveals Congress' intent that "the date of importation" of the imported merchandise is to

be used to begin the 5-year period for unused merchandise drawback claims.  And that term

carries the same long-standing meaning of "bringing an article into a country from the outside."

Congress's intentional use of the date of *importation* for the 5-year period is further

displayed in its differentiation between "entry or importation" in section 1313(j)(1) ("[i]f

imported merchandise, on which was paid any duty, tax, or fee imposed under Federal law upon

*entry or importation* . . . .").  Accordingly, plaintiff's position, Pl. Opp'n at 15-18, that leaving

the FTZ and "entering" the customs territory of the United States—making a formal

consumption entry (*see* Ex. B, ECF No. 22-1 at 6-15)—is the trigger for the five-year drawback

11

period is inconsistent with the plain language of section 1313(j).  Congress is clear in the drawback statute that the 5-year period runs from the date of *importation*, not withdrawal from an FTZ and entry into the customs territory.  Moreover, if "importation" and "entry" were synonymous, then there would have been no need for Congress to use both terms in the statute.[8] And to equate these two terms "would contravene the interpretive canon against surplusage—the idea that all [terms] should be given effect and none should be given an interpretation to have no consequence."  *Amcor Flexibles Singen GMBH v. United States*, 425 F. Supp. 3d 1287, 1299 (Ct. Int'l Trade 2020).

Plaintiff's suggestion that the definition of importation in the drawback statute should be modified to mean merchandise leaving an FTZ and being "entered" into the customs territory, Pl. Opp'n at 16, is barred by the statutory and regulatory meaning of entry.  "Entry" means the documentation or data required to be filed with CBP or submitted electronically "to secure the release of imported merchandise from CBP custody, or the act of filing that documentation."  19 C.F.R. § 141.0a(a); *see* 19 C.F.R. § 142.3 (for required entry documentation); *see also* 19 U.S.C. § 1484(a)(1)(A) (describing the phrase "make entry" as the "filing with [CBP] such documentation or, pursuant to an authorized electronic data interchange system, such information as is necessary to enable [CBP] to determine whether the merchandise may be released from custody of [CBP.]").  Each entry is identified by an entry number assigned and created by the broker or importer.  19 C.F.R. § 142.3a(a) & (b).

---

[8] This distinction is further reflected elsewhere in the statute.  For example, section 1313 specifies the "date of importation or withdrawal" for the 5-year limit on drawback for merchandise not conforming to samples or specification (19 U.S.C. § 1313(c)(1)(D)) and "date of entry" for the 180-day time period for the substitution of finished petroleum derivatives from (19 U.S.C. § 1313(p)(2)(E)).

The CIT has confirmed this definition. "The general term 'entry' has been defined only as the filing of 'documentation ... necessary to ... determine whether the merchandise may be released from customs custody." *Titanium Metals Corp. v. United States*, 901 F. Supp. 362, 364 (Ct. Int'l Trade 1995) (citing 19 U.S.C. § 1484(a)(1)(A)). "Completion of an entry involves filing the declared value, classification and rate of duty applicable to the merchandise." *Id*. at 364 n.6 (citing 1484(a)(1)(B)). Further, it is entry that obligates the importer to pay the estimated duties on their *entered* goods. 19 U.S.C. § 1505(a).[9] It is this obligation which is avoided when an importer places its merchandise in an FTZ.

Also, plaintiff misapplies *Torrington Co. v. United States*, 17 C.I.T. 199, 210 (1993), Pl. Opp'n at 16, to argue that importation "occurs when merchandise formally enters the Customs Territory." However, *Torrington*, which addressed the application of antidumping duties to foreign merchandise in a FTZ, speaks in terms of "entry" being when merchandise enters the Customs territory, not importation. Specifically, *Torrington* states:

> In addition, there is no reason to believe that the use of the term entry in the antidumping duty statute refers to anything other than formal entry of merchandise into the U.S. Customs territory. The antidumping duty statute is part of the Tariff Act of 1930, as amended, as are the regular customs laws of the U.S. which define entry as the process of filing documentation with Customs to allow Customs to determine whether the subject merchandise should be released from Customs' custody and, if so, what duties are due. 19 U.S.C. § 1484(a). This process occurs when merchandise formally enters the U.S. Customs territory. In the case of imports going

---

[9] Section 1505(a) provides in relevant part:

> Unless the entry is subject to a periodic payment referred to in this subsection or the merchandise is entered for warehouse or transportation, or under bond, the importer of record shall deposit with the Customs Service at the time of entry, or at such later time as the Secretary may prescribe by regulation (but not later than 12 working days after entry or release) the amount of duties and fees estimated to be payable on such merchandise.

> through a FTZ, this occurs when the merchandise leaves the FTZ
> and enters the U.S. Customs territory.
>
> Finally, 19 U.S.C. § 1673e(a)(3) (1988) "requires the deposit of
> estimated antidumping duties pending liquidation of entries of
> merchandise at the same time as estimated normal customs duties
> on that merchandise are deposited." (Emphasis added). In terms of
> merchandise inside a FTZ, the deposit of normal customs duties, and
> therefore the deposit of estimated antidumping duties, occurs when
> the merchandise is entered into the U.S. Customs territory unless the
> merchandise has been declared privileged. In this case this Court
> has already determined that there was no requirement that the
> imports in question be declared privileged, therefore deposits of
> estimated antidumping duties were due upon entry of the
> merchandise into the U.S. Customs territory.

*Id.* at 210. Discussing this entry process concerning a FTZ, *Torrington* describes the scenario as "imports going through a FTZ." *Id.* Thus, *Torrington* acknowledges that the merchandise in a FTZ is an "import." As noted above, "[a] product that comes into a country from abroad is an *import*. The process of bringing it in is *importation*.") Bryan A. Garner, GARNER'S MODERN ENGLISH USAGE, 493 (4th ed. 2018) (emphasis in original).

Plaintiff's reliance on *Nissan*, *Goodman*, and *Klockner*[10] for the point that a FTZ is considered outside the Customs territory of the United States, Pl. Opp'n at 16, does not advance its contention that an "importation" only occurs when the goods are entered into the Customs territory. Rather, *Nissan* reveals the opposite in its holding that "the Court of International Trade correctly determined that the *importation* by Nissan of the machinery and capital equipment at issue into the foreign trade sub zone was not for the purpose of being manipulated in one of the ways prescribed by the statute." *Nissan*, 844 F.2d at 1378 (emphasis added). In *Nissan*, the Federal Circuit recognized that placement of goods into a FTZ is an importation.

---

[10] *Nissan Motor Mfg. Corp., U.S.A. v. United States*, 844 F.2d 1375 (Fed. Cir. 1989); *Goodman Mfg., L.P. v. United States*, 69 F.3d 505 (1995); and *Klockner Inc. v. United States*, 590 F. Supp. 1266 (Ct. Int'l Trade 1984).

Nor is the common meaning of importation long recognized by the courts modified by

*BMW Mfg. Inc. v. United States*, 23 C.I.T. 641 (1999) *aff'd* 241 F.2d 1357 (Fed. Cir. 2001).  Pl.

Opp'n at 17.  BMW Manufacturing challenged CBP's regulation, 19 C.F.R. § 24.24(e)(2)(iii),

which mandated "the imposition and collection of the Harbor Maintenance Tax [HMT] upon the

admission of foreign merchandise into a FTZ."  23 C.I.T. at 642.  The CIT concluded that

Congress did not state that HMT was a customs duty, and that "Congress has not said expressly

that FTZ exemptions are applicable to the HMT."  *Id*. at 644.  The CIT further noted that "to

further its purpose, Congress provided that the HMT is to attach at the time of unloading (except

for exports).  26 U.S.C. § 4461(c)(2)(B).  To delay liability until the goods (as entered or

transformed) leave the FTZ and *perhaps* enter the United States Customs territory conflicts with

this express provision."  *Id* (emphasis in original).  The CIT concluded that "HMT must be paid

on goods unloaded at covered ports for admission into FTZs, in accordance with 19 C.F.R. §

24.24(e)(2)(iii)."  *Id*. at 644.  Noticeably missing from *BMW* is a change in the long-standing

meaning of the term "importation."

Plaintiff's further recitation that the customs laws do not apply to merchandise stored in

foreign trade zones is irrelevant to and cannot negate that the drawback statute's time limitation

that requires filing or application for drawback within five years from importation.  Thus, the

critical question is when does "importation" occur.  Plaintiff conflates that term with the

meaning of "entry" in order to make its case.  But these two terms have distinctly different

meanings.  As we established in our opening brief and above, the common meaning, judicial

precedent, and the drawback statutes use of importation and entry show that "importation"

occurs when goods come into the United States from abroad.  The plaintiff's Form 214s further

reinforce that the goods were "imported" more than five years before it filed or applied for drawback.

Plaintiff also contends that by applying the drawback statute as it did and denying its protest, CBP applied a customs law to goods in a FTZ. Pl. Opp'n at 18. This is not factually correct. Rather, CBP applied the drawback statute as written to designated import entries that had not been in a FTZ for approximately five years. *See* Compl. ¶ 6. In so doing, CBP used the common meaning, as explicated by the courts, and consistent with 19 C.F.R. § 101.1 (definitions) of the term importation.

Finally, plaintiff's attempt to equate the words "entry" and "importation" through a strained and misapprehended approach to statutory construction should be rejected. Pl. Opp'n at 22-25. Plaintiff argues that the same words used in different contexts could have different meanings and courts will construe a term in light of the terms surrounding it. Pl. Opp'n at 23. Yet, plaintiff fails to do just this in making its unsupported argument that the context of the FTZ Act requires the "date of importation" to be the date that the subject merchandise is withdrawn from the FTZ for consumption in the United States with assessment of duties and taxes. Pl. Opp'n at 23. But this scenario does not describe an "importation," but instead an "entry." And plaintiff admits this:

> Under the FTZ Act, the designated cigarettes did not become "subject to the laws and regulations of the United States affecting imported merchandise" until they were "sent from the zone to the Customs Territory of the United States." That occurred on May 6, 2013, when KMM filed Consumption *Entry* 605-5547323-4 at the Port of Chicago, and *the imported cigarettes were assessed with duties and taxes*.

Pl. Opp'n at 18 (emphasis added); *see also* Compl. ¶ 9 ("Each of the consumption entries withdrawn from the FTZ and designated in plaintiff's drawback claims was a Type 06

16

entry, reflecting that the goods were withdrawn from a Foreign Trade Zone (typically, FTZ #31 in Madison, Illinois) for consumption."). By its own admission, what was at issue in plaintiff's drawback claims were entries, not importations. Thus, in the context of the drawback statute, which we discussed above as differentiating between an entry and importation, importation did not occur at the time the subject goods were withdrawn from FTZ.

Plaintiff's invitation to find conflict between the drawback and FTZ statutes should be rejected. Congress drafted these statutes with a clear understanding that the terms importation and entry had different meanings. If Congress intended the date of importation to be the same as the date of entry from an FTZ it would have drafted these statutes to state so. It did not.

## <u>CONCLUSION</u>

For the foregoing reasons and those provided in our opening brief, we respectfully request that the Court dismiss this action with prejudice pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

Respectfully submitted,

BRETT A. SHUMATE
Acting Assistant Attorney General
Civil Division

PATRICIA M. McCARTHY
Director

By:    <u>/s/ Justin R. Miller</u>
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

*OF COUNSEL*:                    <u>/s/ Beverly A. Farrell</u>
SABAHAT CHAUDHARY            BEVERLY A. FARRELL
Office of Assistant Chief Counsel        Senior Trial Attorney
International Trade Litigation        Department of Justice, Civil Division
U.S. Customs and Border Protection    Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
Tel.: (212) 264-0483 or 9230
Attorneys for Defendant

Dated: February 4, 2025

18

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE

_____

KING MAKER MARKETING, INC.,      :
                                                    :
                Plaintiff,       :
                                                    :
                  v.             :     Court No. 24-00134
                                                    :
UNITED STATES,                   :
                                                  :
                Defendant.    :
_____:

**<u>CERTIFICATE OF COMPLIANCE</u>**

I, BEVERLY A. FARRELL, a Senior Trial Attorney in the Office of the Assistant

Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field

Office, who is the attorney responsible for Defendant's Reply Memorandum of Law to Plaintiff's

Opposition to Defendant's Motion to Dismiss for Failure to State a Claim Upon Which Relief

Can Be Granted, relying upon the word count feature of the word processing program used to

prepare the response, certify that this memorandum complies with the word count limitation

under the Court's chambers procedures and contains 5,346 words.

                                      <u>/s/ Beverly A. Farrell</u>
                                      Beverly A. Farrell