Slip Op.25-58

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **KING MAKER MARKETING INC.,** | |
| Plaintiff, | Before: Timothy M. Reif, Judge |
| v. | Court No. 24-00134 |
| **UNITED STATES,** | |
| Defendant. | |

## OPINION

[Granting defendant's motion to dismiss with prejudice.]

Dated: May 15, 2025

John M. Peterson and Patrick B. Klein, Neville Peterson, LLP, of New York, N.Y., argued for plaintiff King Maker Marketing Inc. With them on the brief were Richard F. O'Neill and Maria E. Celis.

Beverly A. Farrell, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, N.Y., argued for defendant United States. With her on the briefs were Brett A. Shumate, Acting Assistant Attorney General, Patricia M. McCarthy, Director and Justin R. Miller, Attorney-in-Charge, International Trade Field Office. Of counsel were Sabahat Chaudhary, Office of the Chief Counsel, U.S. Customs and Border Protection, of Washington, D.C., and Alexandra Khrebtukova, Office of Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection, of New York, N.Y.

Reif, Judge: Before the court is the motion to dismiss of the United States ("defendant"). King Maker Marketing Inc. ("plaintiff") brings the instant action to contest the deemed denial of administrative protest 1001-22-101163 (the "Protest"). The Protest challenged the decision of U.S. Customs and Border Protection ("Customs") to deny as untimely plaintiff's various claims for substitution unused merchandise

Court No. 24-00134 Page 2

drawback submitted pursuant to 19 U.S.C. § 1313(j)(2).  Compl. ¶ 1, ECF No. 5; Am. Summons, ECF No. 15.

Defendant moves to dismiss plaintiff's complaint and argues that "the plain terms of the drawback statute have not been met."  Def.'s Mot. Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted ("Def. Br.") at 1, ECF No. 20.  For the reasons discussed below, the court grants defendant's motion to dismiss with prejudice.

## BACKGROUND

Plaintiff was the importer of 21 shipments of certain paper-wrapped cigarettes (the "merchandise") that arrived in the United States and were admitted into a foreign-trade zone ("FTZ") between September 4, 2012, and February 6, 2014.  Compl. ¶¶ 4, 6; Def. Br. at 4.  No entry for consumption was filed, and no duties were paid, at the time that the merchandise was admitted into the FTZ.  Compl. ¶ 7.

Plaintiff withdrew the various shipments of the merchandise from the FTZ for domestic consumption between May 6, 2013, and September 3, 2018.  Compl. ¶¶ 6, 8; Def. Br. at 5.  At the time of withdrawal of each shipment, plaintiff filed entries for consumption with Customs and paid applicable duties, taxes and fees.[1]  Compl. ¶ 8; Def. Br. at 5.

The merchandise was classified under Harmonized Tariff Schedule of the United States ("HTSUS") subheading 2404.20.80, which covers "Cigarettes containing tobacco . . . Other [than containing clove]; paper wrapped."  Compl. ¶ 8; Def. Br. at 5.  After entry

---

[1] Each of the entries was a Type 06 entry, which means that the merchandise was withdrawn from the FTZ for consumption.  Compl. ¶ 9; see U.S. Customs and Border Prot., *ACE Transaction Details* (last modified Jan. 23, 2024), https://www.cbp.gov/trade/automated/ace-transaction-details.

of the merchandise from the FTZ, plaintiff came into possession of, and exported, certain other cigarettes that were classified also under HTSUS subheading 2404.20.80. Compl. ¶ 10; Def. Br. at 5. Plaintiff identified these other cigarettes as substitution merchandise that qualified for substitution unused merchandise drawback pursuant to 19 U.S.C. § 1313(j)(2). Compl. ¶ 10; Def. Br. at 5.

Plaintiff filed its various substitution unused merchandise drawback claims between May 5, 2018, and February 15, 2019. Compl. ¶¶ 6, 11; Def. Br. at 5. Customs denied the various drawback claims on March 18, 2022. Compl. ¶ 14; Def. Br. at 5. Customs concluded that the claims were untimely because they were not filed before the close of the five-year period beginning on the date of importation of the imported merchandise. Compl. ¶ 14; Def. Br. at 5-6.

On September 6, 2022, plaintiff filed timely the Protest of the denial of its various drawback claims. Def. Br. at 6; *see* Protests and Entries, ECF No. 12-1. On June 26, 2024, plaintiff requested accelerated disposition of the Protest pursuant to 19 U.S.C. § 1515(b). Compl. ¶ 17; Def. Br. at 6.

Customs did not decide the Protest within 30 days following the mailing of plaintiff's request. Compl. ¶ 18; Def. Br. at 6. For that reason, the Protest was deemed denied by operation of law on July 27, 2024. Compl. ¶ 18; Def. Br. at 6.

On August 2, 2024, plaintiff filed the instant action by filing summons and complaint. Summons, ECF No. 1; Compl.

On November 27, 2024, defendant filed its motion to dismiss the complaint. Def. Br. On April 17, 2025, the Court heard oral argument. Oral Arg. Tr., ECF No. 34.

## JURISDICTION AND STANDARD OF REVIEW

The Court exercises exclusive jurisdiction over all civil actions commenced under section 515 of the Tariff Act of 1930, 19 U.S.C. § 1515, to contest protests denied by Customs, 28 U.S.C. § 1581(a),[2] and reviews such actions de novo. 28 U.S.C. § 2640(a)(1) ("The Court of International Trade shall make its determinations upon the basis of the record made before the court . . . .").

In a USCIT Rule 12(b)(6) motion to dismiss for failure to state a claim, "any factual allegations in the complaint are assumed to be true and all inferences are drawn in favor of the plaintiff." *Env't One Corp. v. United States*, 47 CIT __, __, 627 F. Supp. 3d 1349, 1355 (2023) (quoting *Amoco Oil Co. v. United States*, 234 F.3d 1374, 1376 (Fed. Cir. 2000)); *see* USCIT R. 12(b)(6). In deciding a Rule 12(b)(6) motion, the court may consider documents "incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record." *A & D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1147 (Fed. Cir. 2014) (alteration in original) (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004)).

"A court may properly dismiss a claim pursuant to [USCIT] Rule 12(b)(6) only if Plaintiffs' allegations of fact are not 'enough to raise a right to relief above the speculative level.'" *VoestAlpine USA Corp. v. United States*, 46 CIT __, __, 578 F. Supp. 3d 1263, 1276 (2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss, plaintiff's complaint must contain sufficient

---

[2] References to the U.S. Code are to the 2018 edition. Further citations to the Tariff Act of 1930, as amended, are to the relevant portions of Title 19 of the U.S. Code.

factual material to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

## DISCUSSION

Parties agree that each of the 21 shipments of the merchandise was imported more than five years before the filing date of its corresponding drawback claim. Compl. ¶ 6; Def. Br. at 3. 19 U.S.C. § 1313(r) requires that a drawback claim shall be filed "not later than 5 years after the date on which merchandise on which drawback is claimed was imported." For that reason, the sole issue before the court is whether the "date of importation" pursuant to 19 U.S.C. § 1313 refers, in this case, to: (1) the date on which the merchandise was imported; or (2) the date on which the merchandise was withdrawn from the FTZ for consumption.

**I.    Legal framework**

"A 'drawback' is a customs transaction involving the refund of any payments that were made upon the importation of a good." *Nat'l Ass'n of Mfrs. v. Dep't of Treasury* ("*NAM II*"), 10 F.4th 1279, 1281 (Fed. Cir. 2021).

The type of drawback at issue in the instant case is the substitution drawback. *See* 19 U.S.C. § 1313. "Simply put, a party is entitled to substitution drawback on the taxes, fees, and duties . . . paid on imports when other merchandise is exported [or destroyed] under the same [HTSUS] subheading in a one-to-one fashion." *Nat'l Ass'n of Mfrs. v. U.S. Dep't of Treasury* ("*NAM I*"), 44 CIT __, __, 427 F. Supp. 3d 1362, 1364-65 (2020) (footnotes omitted), *aff'd sub nom. NAM II*, 10 F.4th at 1279.

19 U.S.C. § 1313(j)(2) provides, in relevant part:

> (2) Subject to paragraphs (4), (5), and (6), if there is, with respect to imported merchandise on which was paid any duty, tax, or fee imposed

under Federal law upon entry or importation, any other merchandise (whether imported or domestic), that—

(A) is classifiable under the same 8-digit HTS subheading number as such imported merchandise;

(B) is, before the close of the *5-year period beginning on the date of importation of the imported merchandise* and before the drawback claim is filed, either exported or destroyed under customs supervision; and

(C) before such exportation or destruction—

(i) is not used within the United States, and

(ii) is in the possession of, including ownership while in bailment, in leased facilities, in transit to, or in any other manner under the operational control of, the party claiming drawback under this paragraph, if that party—

(I) is the importer of the imported merchandise, or

(II) received the imported merchandise, other merchandise classifiable under the same 8-digit HTS subheading number as such imported merchandise, or any combination of such imported merchandise and such other merchandise, directly or indirectly from the person who imported and paid any duties, taxes, and fees imposed under Federal law upon importation or entry and due on the imported merchandise (and any such transferred merchandise, regardless of its origin, will be treated as the imported merchandise and any retained merchandise will be treated as domestic merchandise);

then, notwithstanding any other provision of law, upon the exportation or destruction of such other merchandise an amount calculated pursuant to

regulations prescribed by the Secretary of the Treasury under subsection (l) shall be refunded as drawback.

19 U.S.C. § 1313(j)(2) (emphasis supplied).

In addition, § 1313(r)(1) provides that "[a] drawback entry shall be filed or applied for, as applicable, not later than 5 years after *the date on which merchandise on which drawback is claimed was imported*. Claims not completed within the 5-year period shall be considered abandoned." (emphasis supplied). Customs has interpreted "date of importation" to mean:

> [I]n the case of merchandise imported otherwise than by vessel, the date on which the merchandise arrives within the Customs territory of the United States. In the case of merchandise imported by vessel, "date of importation" means the date on which the vessel arrives within the limits of a port in the United States with intent then and there to unlade such merchandise.

19 C.F.R. § 101.1. And Customs has defined the "Customs territory of the United States" to include "only the States, the District of Columbia, and Puerto Rico." *Id.*

The Foreign-Trade Zones Act of 1934 (the "FTZ Act"), 19 U.S.C. § 81a et seq., "grant[ed] to corporations the privilege of establishing, operating, and maintaining foreign-trade zones in or adjacent to ports of entry under the jurisdiction of the United States." *Id.* § 81b(a). Within these foreign-trade zones,

> Foreign and domestic merchandise of every description, except such as is prohibited by law, may, *without being subject to the customs laws of the United States*, except as otherwise provided in this chapter, be brought into a zone and may be stored, sold, exhibited, broken up, repacked, assembled, distributed, sorted, graded, cleaned, mixed with foreign or domestic merchandise, or otherwise manipulated, or be manufactured except as otherwise provided in this chapter, and be exported, destroyed, or sent into customs territory of the United States therefrom, in the original package or otherwise; *but when foreign merchandise is so sent from a zone into customs territory of the United States it shall be subject to the laws and regulations of the United States affecting imported merchandise* . . . .

19 U.S.C. § 81c(a) (emphases supplied).

Finally, "a governmental grant of a privilege or benefit," such as a drawback, "is to be construed in favor of the government and against the party claiming the grant." *Swan & Finch Co. v. United States*, 190 U.S. 143, 146 (1903); *see also United States v. Allen*, 163 U.S. 499, 504 (1896) (stating "the general principle that exemptions must be strictly construed, and that doubt must be resolved against the one asserting the exemption"); *Guess? Inc. v. United States*, 944 F.2d 855, 858 (Fed. Cir. 1991).

## II.    Analysis

The court concludes that the "date of importation" of the merchandise is interpreted properly to mean the date on which the merchandise was imported, even though the merchandise was admitted into an FTZ upon importation.

It is undisputed that the merchandise arrived by vessel. Pl. Br., Exs. C-E (listing the importing vessels for the various shipments of the merchandise). For that reason, under Customs' regulations, the "date of importation" for purposes of the drawback claim would be "the date on which the vessel [carrying the merchandise] arrive[d] within the limits of a port in the United States with intent then and there to unlade such merchandise." 19 C.F.R. § 101.1.

However, plaintiff argues that "the 'date of importation' in this case should be defined as the date that the imported, designated merchandise identified in plaintiff's drawback claim was withdrawn from the FTZ for domestic consumption, and first became 'subject to the laws and regulations of the United States affecting imported merchandise.'" Pl. Br. at 4 (quoting 19 U.S.C. § 81c(a)). Plaintiff maintains that the application of Customs' definition of "date of importation" for merchandise imported via

vessel "runs contrary to the clear (and unconditional) Congressional [sic] command in the Foreign Trade Zones Act [sic] . . . that goods stored in an FTZ are outside the Customs Territory of the United States and are not subject to the Customs laws of the United States." *Id.* at 20.

To start, neither the substitution unused merchandise drawback statute nor the FTZ Act defines "importation" or "import." *See* 19 U.S.C. § 1313; *id.* §§ 81a-u. However, "[i]n interpreting the trade laws, courts frequently have relied on the ordinary meaning of 'importation.'" *United States v. Commodities Exp. Co.*, 14 CIT 166, 169, 733 F. Supp. 109, 112 (1990).

The second edition of *Black's Law Dictionary*, published in 1910, defines "importation" as "[t]he act of bringing goods and merchandise into a country from a foreign country."[3] *Importation*, *Black's Law Dictionary* (2d ed. 1910). And in 1923, the Supreme Court stated that "[i]mportation . . . consists in bringing an article into a country from the outside. If there be an actual bringing in it is importation regardless of the mode in which it is effected." *Cunard S.S. Co. v. Mellon*, 262 U.S. 100, 122 (1923); *see also May Co. v. United States*, 12 Ct. Cust. App. 266, 270-271 (1924); *Sterling Bronze Co. v. United States*, 12 Ct. Cust. App. 338, 340 (1924); *Kee Co. v. United States*, 13 Ct. Cust. App. 105, 109 (1925); *United States v. John V. Carr & Son, Inc.*, 58 Cust. Ct. 809, 813, 266 F. Supp. 175, 178 (1967). The Court in *Cunard* distinguished the

---

[3] The third edition, published three years after the enactment of the Tariff Act of 1930 and one year prior to the enactment of the FTZ Act, maintains the same definition of "importation." *See Importation*, *Black's Law Dictionary* (3d ed. 1933).

concepts of "importation" and "entry" when it stated that "[e]ntry through a customs house is not of the essence of the act [of importation]."[4] *Cunard*, 262 U.S. at 122.

This Court has defined "entry" as "the process of filing documentation with Customs to allow Customs to determine whether the subject merchandise should be released from Customs' custody and, if so, what duties are due." *Torrington Co. v. United States*, 17 CIT 199, 210, 818 F. Supp. 1563, 1573 (1993); *see also Entry*, *Black's Law Dictionary* (2d ed. 1910) ("The entry of imported goods at the custom house consists in submitting them to the inspection of the revenue officers, together with a statement or description of such goods, and the original invoices of the same, for the purpose of estimating the duties to be paid thereon."). "In the case of imports going

---

[4] Indeed, the conceptual distinction between "importation" and "entry" dates to the early nineteenth century at the latest. *See, e.g.*, *United States v. Vowell*, 9 U.S. 368, 369 (1810) ("The laws of the United States take a distinction between *importing and entering* . . . ."); *Arnold v. United States*, 13 U.S. 104, 110 (1815) ("By the collection law, and all the forms of manifest, entry, &c. it is clearly evinced that importation precedes entry."); *accord Perots v. United States*, 19 F. Cas. 258, 258 (C.C.D. Pa. 1816) ("[I]t is to be observed[] that there is no statute of the United States, nor any general principle of law, which requires an entry to be made, in order to render the importation complete."); *United States v. Lyman*, 26 F. Cas. 1024, 1028 (C.C.D. Mass. 1818) ("[I]mportation is not the making entry of goods at the custom house, but merely the bringing them into port, and so is complete before entry . . . .").

through a FTZ, [entry] occurs when the merchandise leaves the FTZ and enters the U.S. Customs territory."[5]  *Torrington*, 17 CIT at 210, 818 F. Supp. at 1573.

This Court has also stated that "[t]here is no question that ordinarily, and under the provision of the [FTZ Act] . . . a Foreign Trade Zone is not within the Customs Territory of the United States."  *Klockner Inc. v. United States*, 8 CIT 3, 12, 590 F. Supp. 1266, 1273 (1984).  Even so, the legislative history of the FTZ Act indicates that Congress considered FTZs to be "within or adjacent to a port of entry."  *See, e.g.*, S. Rep. No. 81-1107, at 1 (1949), *reprinted in* 1950 U.S.C.C.A.N. 2533, 2533 ("A foreign-trade zone is an isolated, fenced off, and policed area within or adjacent to a port of entry where foreign merchandise may be landed, stored, repacked, sorted, mixed or otherwise manipulated with a minimum of customs control and without customs bond.").  An FTZ "within or adjacent to a port of entry," *id.*, is thereby "within the limits of a port in the United States."  19 C.F.R. § 101.1.  Hence, the "date of importation" of the subject merchandise is the date on which that merchandise was unladen into the FTZ.  For that reason, Customs' interpretation of "date of importation" for merchandise in an FTZ as

---

[5] Plaintiff invokes the same quotation from *Torrington* in support of the proposition that the "Court has noted that the *importation* 'process occurs when merchandise formally enters the Customs territory.  In the case of goods going through [an FTZ], this occurs when the merchandise leaves the FTZ and enters the United States Customs territory." Compl. ¶ 25 (emphasis supplied) (quoting *Torrington Co. v. United States*, 17 CIT 199, 210, 818 F. Supp. 1563, 1573 (1993)); *see also* Pl. Br. at 12.

Plaintiff misreads *Torrington*.  The sentence that immediately precedes the quoted section of *Torrington* reads, in relevant part:  "[T]he regular customs laws of the U.S. . . . define *entry* as the process of filing documentation with Customs to allow Customs to determine whether the subject merchandise should be released from Customs' custody and, if so, what duties are due."  *Torrington*, 17 CIT at 210, 818 F. Supp at 1573 (emphasis supplied).  Indeed, the entire paragraph is devoted to the discussion of entry, not importation.  *See id.*

"the date on which the vessel arrives *within the limits of a port in the United States* with intent then and there to unlade such merchandise" comports with this legislative history. 19 C.F.R. § 101.1.

The court concludes that merchandise in an FTZ has still been imported, even if it is outside of the customs territory of the United States. By entering the port and then traveling to an FTZ within or near that port, the merchandise has been brought into the United States from a foreign country and thereby imported. *See Cunard*, 262 U.S. at 122. Accordingly, the merchandise at issue here is classified properly as imported as of the date that it was admitted into the FTZ.

Turning to the language of the substitution unused drawback statute itself, the Supreme Court has stated that "where words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country, they are presumed to have been used in that sense unless the context compels to the contrary." *Standard Oil Co. of N.J. v. United States*, 221 U.S. 1, 59 (1911).

As discussed, long-standing precedent demonstrates that "the date of importation is not the same concept as the date . . . of entry." *Zojirushi Am. Corp. v. United States*, 40 CIT __, __, 180 F. Supp. 3d 1354, 1359 n.2 (2016). And it is notable that any reference to this perennial conceptual distinction is absent from the plain language of § 1313. *See* 19 U.S.C. § 1313. When Congress drafted the substitution unused drawback statute, it decided specifically that the five-year period would begin with the date of importation. The language is unambiguous. And in doing so, Congress invoked importation, a centuries-old "term[] of art" that has maintained a consistent meaning since the early nineteenth century at the latest. *See Morissette v. United*

*States*, 342 U.S. 246, 263 (1950) ("[W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed."); *see also United States v. Hansen*, 599 U.S. 762, 774 (2023).

Moreover, Congress enacted § 1313(j)(2) in 1984, over five decades after it enacted the FTZ Act.[6] *See NAM I*, 44 CIT at __, 427 F. Supp. 3d at 1373 ("Congress has several times addressed the issue of drawback since enacting the substitution drawback provision, 19 U.S.C. § 1313(j)(2), in 1984."). Congress explicitly distinguished "entry" and "importation" in the statute. *See* 19 U.S.C. § 1313(j)(2) ("[I]f there is, with respect to imported merchandise on which was paid any duty, tax, or fee imposed under Federal law *upon entry or importation* . . . ."). Congress made this distinction in a 2004 amendment to § 1313(j), seven decades after the enactment of the FTZ Act. *See* Pub. L. No. 108-429, § 1557, 118 Stat. 2434, 2579 (2004). If Congress had wanted to align the five-year period with the date of entry in cases involving merchandise admitted into an FTZ, Congress would have done so. In the Trade Facilitation and Trade Enforcement Act of 2015, Congress changed the time limit for drawback from three years to five years, but left unchanged the alignment of the time period with the date of importation. *See* Pub. L. No. 114-125, § 906, 130 Stat. 122, 228 (2016). And at no point in the decades since the enactment of §§ 1313(j)(2) and 1313(r) has Congress

---

[6] Moreover, Congress enacted § 1313(r) in 1993. Pub. L. No. 103-82, § 632, 107 Stat. 2057 (1993).

carved out an exception for imported merchandise admitted into FTZs.  *See,* e.g., Pub. L. No. 116-260, § 601, 134 Stat. 1182, 2150 (2020).  When Congress uses two distinct terms, it is well settled that each is given its distinct meaning.  "[A] statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant."  *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (quoting *Washington Mkt. Co. v. Hoffman*, 101 U.S. 112, 115 (1879)).

      Plaintiff argues also that a plain reading of "date of importation" would produce "absurd or anomalous results."  Pl. Br. at 20.  Plaintiff asserts specifically that it "would be both absurd and anomalous to interpret a time limitation on recovery of duties and taxes paid as beginning to run *before* those duties and taxes are paid."  *Id.* at 21.

      The court recognizes the potential for friction between plain readings of the FTZ Act and the substitution unused drawback statute.  However, any inconsistency would be for Congress to resolve.

      Finally, plaintiff argues that "in denying [plaintiff's] protest, Customs did what the [FTZ] law prohibits: it applied a Customs law . . . to the designated cigarettes during the time they were in the FTZ."  *Id.* at 14.

      Plaintiff's argument is not persuasive.  A number of U.S. customs requirements promulgated pursuant to certain provisions of customs law will by necessity apply to imports admitted to an FTZ.  *See, e.g.*, *Foreign Trade Zones; Specialized and General Provisions*, 51 Fed. Reg. 5,040, 5,040 (Feb. 11, 1986) (setting forth the "general provisions applicable to the administration of all zones and other specialized provisions applicable to subzones and zone sites"); *id.* at 5,040-41 ("Zones are established under the [FTZ Act], as amended (19 U.S.C. 81a-81u), and the general regulations and rules

of procedure of the Foreign-Trade Zones Board . . . . Part 146, Customs Regulations (19 CFR Part 146), governs the admission of merchandise into a zone; the manipulation, manufacture, destruction, or exhibition in a zone; the exportation of merchandise from a zone; and the transfer of merchandise from a zone into the Customs territory."); 19 C.F.R. § 146.10 (authorizing the port director to examine merchandise "before or at the time of admission to a zone, *or at any time thereafter*" (emphasis supplied)); *id.* § 146.32(a)(1) (requiring the completion of a form and issuance of a permit to admit merchandise into an FTZ); *id.* § 146.51 (authorizing the port director to "segregat[e] . . . any zone status merchandise whenever necessary to protect the revenue or properly administer U.S. laws or regulations"); *id.* § 146.66 (regulating the transfer of merchandise from one FTZ to another). As a consequence, Customs regulations governing merchandise in an FTZ pertain even though the FTZ Act provides that such merchandise is not "subject to the customs laws of the United States." 19 U.S.C. § 81c(a).

As the U.S. Court of Appeals for the Federal Circuit has stated, "the legislative history of § 81c(a) demonstrates that the exemption therein is targeted at *duties and taxes* that attach upon formal entry into the United States customs territory." *BMW Mfg. Corp. v. United States*, 241 F.3d 1357, 1363 (Fed. Cir. 2001) (emphasis supplied) (citing S. Rep. No. 81-1107, at 3-4). Accordingly, and contrary to plaintiff's proffered interpretation, there is no conflict between § 1313 and § 81c(a). Some customs laws necessarily will apply to imports in an FTZ. *See United States v. Borden Co.*, 308 U.S. 188, 198 (1939) ("It is a cardinal principle of construction that repeals by implication are not favored. When there are two acts upon the same subject, the rule is to give effect to

both if possible."). Further, and consistent with this conclusion, the application of the definition of "date of importation" in Customs regulations to substitution unused merchandise drawback claims regarding merchandise admitted into an FTZ "give[s] effect to both" statutes. *Id.*

In sum, the court declines to define the "date of importation" of the merchandise to be the date of entry in the case of goods admitted into an FTZ. Accordingly, plaintiff's arguments on undisputed facts are insufficient for plaintiff to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

## CONCLUSION

For the reasons described above, it is hereby

**ORDERED** that defendant's motion to dismiss is **GRANTED** with prejudice. Judgment will enter accordingly.

/s/    Timothy M. Reif
Timothy M. Reif, Judge

Dated: May 15, 2025
New York, New York